PAMELA S. PECHAN, Plaintiff-Appellant and Cross-Appellee, v. DYNA-PRO, INC., Defendant-Appellee and Cross-Appellant.

Second District No. 2—92—1122

Opinion filed October 19, 1993.

 

Michael A. Benedetto, of Oak Brook, for appellant.

John F. Gregorio, of Gregorio & Nasharr, of Chicago (Anthony J. Nasharr III, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

In a case of first impression in the State of Illinois, we decide whether plaintiff, Pamela S. Pechan, has stated causes of action against her ex-employer, DynaPro, Inc., for injuries allegedly caused by secondhand cigarette smoke at DynaPro's facility.

On February 4, 1992, Pechan filed a motion for preliminary injunction, which was later denied, and a verified complaint for injunctive and other relief. Pechan did not demand a jury in her original complaint. She alleged that she had been employed as an office manager for DynaPro during and before July 1990. DynaPro employed both smoking and nonsmoking employees. Pechan claimed that she suffered harm because DynaPro allowed cigarette smoking at its facility. She requires injections, medication and an inhaler because of coughing, wheezing, difficulty breathing and sleeping, swelling sinuses, dripping sinuses, swelled face and eyes, hives, throat irritation and dryness, light-headedness, dizziness, watery eyes, burning nose, headaches and stress manifested by a spastic colon.

Pechan further alleged that DynaPro was notified of the smoking problem in (1) a petition presented by her and other employees requesting a smoke-free working environment; (2) written memos to DynaPro officials; (3) a letter from the Du Page County Health Department informing DynaPro that its facility was violating the Illinois Clean Indoor Air Act (the Act) (410 ILCS 80/1 et seq. (West 1992)); and (4) letters written by her allergists requesting that Pechan work in a smoke-free environment. Despite DynaPro's knowledge, Pechan

alleged that DynaPro failed to prohibit smoking or take action to enforce the company policy to limit smoking to designated areas.

Pechan alleged that DynaPro also attempted to ostracize her because of her complaints about DynaPro's handling of the smoking policy. She claimed DynaPro eliminated regular job reviews, pay increases, avoided normal verbal contact, and generally discriminated against her for "exercising her right to breathe clean air."

In count I of her verified complaint, Pechan sought preliminary and permanent injunctive relief, praying that DynaPro be enjoined from "allowing, causing or contributing to smoking in its facility" and that it be required to impose an immediate smoking ban. Pechan also prayed that DynaPro be enjoined from discriminating against her during the course of her employment.

Count II was an action at law based on negligence. Pechan alleged that DynaPro breached its duty of care to her by negligently, willfully and intentionally failing to prohibit smoking or enforce its smoking policy. In count III, Pechan alleged that DynaPro discriminated against her in violation of section 9 of the Act (410 ILCS 80/9 (West 1992)).

On March 16, 1992, DynaPro filed a motion for summary judgment on count I. DynaPro argued that Pechan had voluntarily resigned as office manager on March 3, 1992. DynaPro claimed that Pechan could not seek the injunctive relief requested in count I because she was no longer "personally affected by repeated violation" of the Act (410 ILCS 80/8 (West 1992)) and no longer had standing to pursue injunctive relief under the Act.

In Pechan's response to the motion for summary judgment, she claimed that she was forced to resign. She had been subjected to repeated humiliation and embarrassment, had items removed from her office that were necessary to perform her duties as office manager, and had, in effect, been demoted and given tasks never assigned to her in the past. She concluded that summary judgment was improper because the question of whether she had resigned voluntarily was a genuine issue of material fact.

DynaPro also moved to strike counts II and III of Pechan's complaint. Pechan was granted leave to amend her pleadings, and she filed amended counts II through V. She also filed a motion for leave to file a jury demand. Count II is a cause of action for express authorization of the intentional tort of battery. Pechan alleges that DynaPro expressly authorized cigarette smoking in its facility and that the "smoke did contact and enter into and upon" Pechan's body without her consent continuously since at least March 1, 1990. The contact

with the smoke caused her numerous injuries. Even after Pechan notified DynaPro that the smoke caused her harm and affected her job performance, DynaPro continued to expressly allow smoking in its facility.

Count III alleges common-law negligence and willful and wanton conduct. Pechan states that DynaPro owed her the duty "to prevent the harm and injury caused to her based upon actual knowledge of said harm and injury." She further claims that DynaPro breached this duty by failing to prevent or control cigarette smoke at its facility and that DynaPro had a conscious and reckless disregard for Pechan's health and safety. As a result of DynaPro's alleged negligence, Pechan suffered harm and injury.

Count IV alleges statutory negligence and willful and wanton conduct based on the Act. Pechan claims that the Act was intended to protect employees from the harmful effects of tobacco smoke at the workplace. She further alleges that DynaPro violated the Act by failing to limit smoking to private, enclosed offices and failing to use "existing physical barriers, ventilation systems and other physical elements of the premises to minimize the intrusion of smoke in areas occupied by [Pechan]."

Count V is a cause of action based on statutory discrimination. Pechan alleges that after she filed complaints and legal action against DynaPro, it:

"(a) removed all company property from her office without her knowledge and consent;

(b) prevented her from performing her usual assigned tasks;

(c) assigned to her the single task of entering resume data into a computer, a menial task intended to degrade, humiliate and ostracize her; and

(d) failed to take adequate action to eliminate or substantially reduce cigarette smoking and tobacco smoking, thus placing Plaintiff in continuing risk of harm and injury."

Because of DynaPro's actions, Pechan claims that she was "required to involuntarily leave her position," thereby suffering lost wages and reduced prospects for employment.

DynaPro responded to the amended complaint by filing a combined motion to dismiss and strike amended count II (see 735 ILCS 5/2—619.1 (West 1992)) based upon sections 2—615 and 2—619(a)(9) of the Civil Practice Law (the Code) (735 ILCS 5/2—615, 2—619(a)(9) (West 1992)). DynaPro argues that Pechan failed to state a cause of action for battery because the employees who smoke did not intend that the emitted smoke touch Pechan. DynaPro also argues that count

II should be dismissed because the act of smoking is a lawful act that does not rise to the level of a battery.

DynaPro simultaneously filed a separate motion to dismiss and strike amended counts III and IV pursuant to section 2—619(a)(9) of the Code. DynaPro contends that it did not have a common-law duty to provide a smoke-free environment. In addition, DynaPro claims that counts III and IV were barred by the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)). Finally, DynaPro claims that count IV should be dismissed because the Act does not provide for a private right of action for damages, only for injunctive relief.

DynaPro stood on its motion for summary judgment on count I of the original complaint and also filed a motion for summary judgment on amended count V pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1992)). DynaPro contends that all of the purported acts of discrimination alleged by Pechan occurred on February 6, 1992. DynaPro claims that Pechan's deposition testimony directly contradicted the allegations in count V. Thus, DynaPro concludes that no genuine issue of material fact existed to support a claim of discrimination.

Pechan responded to DynaPro's motions and a hearing was held on July 13, 1992. The parties argued the merits of the motions attacking counts I through V and also addressed Pechan's motion for leave to file a jury demand, which was granted by the trial court. In a letter opinion and order written the day after the hearing, the trial court, adopting DynaPro's positions, granted summary judgment on counts I and V and dismissed counts II, III and IV. However, the trial court continued the matter until August 25, 1992, for a hearing on DynaPro's motion for sanctions. After the trial court denied Dyna-Pro's motion for sanctions, Pechan filed a timely appeal of the trial court's July 23, 1992, order. DynaPro cross-appealed the July 13, 1992, order allowing Pechan leave to file a jury demand.

For purposes of procedural consistency, we will address first whether summary judgment was proper on counts I and V. Thereafter, we will address whether counts II, III and IV should have been dismissed under sections 2—615 and 2—619(a) of the Code.

Summary judgment is proper when the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to a judgment. (735 ILCS 5/2—1005(c) (West 1992).) Because summary judgment is a drastic procedure to dispose of litigation, it should be granted only when the moving party's right is clear and free from doubt. (*Gonzalez v. State Farm Mutual Automobile Insurance Co.*

(1993), 242 Ill. App. 3d 758, 761.) Courts must construe the pleadings, depositions and affidavits strictly against the movant and liberally in favor of the opponent. (*Richter v. Burton Investment Properties, Inc.* (1993), 240 Ill. App. 3d 998, 1001.) Inferences may be drawn from undisputed facts, and if reasonable persons can draw differing inferences, an issue of fact exists. *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272.

### INJUNCTION

█ Pechan sought an immediate ban on smoking at DynaPro; that DynaPro be enjoined from allowing, causing and contributing to smoking at its facility that affected and harmed her; and that DynaPro be enjoined from discriminating against her during the course of her employment, including terminating her without good cause. It is not possible to enjoin DynaPro from terminating Pechan because she no longer works for DynaPro. Also, because she no longer is employed with DynaPro, Pechan cannot directly benefit from a change in DynaPro's smoking policy. Moreover, Pechan's counsel made clear at oral argument that Pechan did not seek reinstatement. Thus, granting the requested injunctive relief would not benefit Pechan. The court will not grant injunctive relief when it is unnecessary and of no benefit to the plaintiff. *Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, 264.

### DISCRIMINATION

At issue is whether the trial court erred in granting summary judgment on count V, which is an action for statutory discrimination under the Act. Pechan contends that section 9 of the Act prohibits discrimination against those individuals who exercise their rights under the Act. (410 ILCS 80/9 (West 1992).) She claims that DynaPro's actions on February 6, 1992, when its officials removed company and personal property from her office, assigned her to "menial" tasks and continued to allow smoking, forced her to resign. She concludes that such discriminatory conduct is the type actionable under section 9 of the Act.

DynaPro contends that portions of Pechan's deposition testimony contradict the allegations of discrimination such that no genuine issue of fact exists. DynaPro claims that no consent was needed to remove its property from Pechan's office, and the "personal property" in Pechan's office belonged to another employee. DynaPro also asserts that Pechan had no written job description, her tasks had varied during her employment, and new assignments were not unusual. Thus, Pe-

chan's "menial" task of data entry was one within the usual scope of her employment. Finally, DynaPro claims that Pechan's allegation that it did not eliminate or substantially reduce smoking is irrelevant to a claim of discrimination.

As a preliminary matter, we must determine whether the Act allows a private cause of action for damages for section 9 discrimination. Section 9 of the Act provides that "[n]o individual may be discriminated against in any manner because of the exercise of any rights afforded by this Act." (410 ILCS 80/9 (West 1992).) The only specific relief afforded under the Act is injunctive relief under section 8. (410 ILCS 80/8 (West 1992).) Also, an entity or person who violates the section of the Act prohibiting smoking in public places not excluded by the Act is guilty of a petty offense. 410 ILCS 80/7 (West 1992).

In *Rodgers v. St. Mary's Hospital* (1992), 149 Ill. 2d 302, our supreme court discussed the factors considered in deciding whether a statute grants a private cause of action by implication:

> " '(1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act.' " *Rodgers*, 149 Ill. 2d at 308, quoting *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 312-13.

The supreme court continually has been willing to imply a private remedy to give effect to a particular statute. (*Rodgers*, 149 Ill. 2d at 309 (implied right for damages for violation of X-Ray Retention Act); *Corgan*, 143 Ill. 2d at 315 (implied right of action for nuisance under the Psychologist Registration Act); *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 391 (implied right of action under Real Estate Brokers and Salesmen License Act); *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 185 (implied right of action for retaliatory discharge for employees who are threatened because of filing a claim under the Workers' Compensation Act).

There is no question that Pechan is a member of the class to be protected by the Act and that her alleged injury, discrimination, is one the Act was designed to prevent. Thus, we will analyze the purpose of the Act and whether it is necessary to provide a right to damages for section 9 discrimination.

■ The purpose of the Act is to protect nonsmoking individuals from harmful, dangerous and annoying effects from tobacco smoke. (410 ILCS 80/2 (West 1992).) We believe that providing plaintiffs with

a right to damages when discriminated against for exercising their right to breathe clean air in public places is consistent with the underlying purposes of the Act.

Moreover, we believe it is necessary to provide the remedy of damages for individuals discriminated against for exercising rights under the Act. Although some acts of discrimination may be remedied by injunctive relief allowed under section 7 of the Act, there are some acts of discrimination for which injunctive relief is inadequate. An individual may be demoted or terminated for exercising her rights under the Act. An injunction may return the individual to her prior employment position, but does not compensate her for the wages she lost during the period of discrimination. For such situations, the only adequate remedy is an action for damages. We hold that there is an implied private right to damages for individuals who have suffered discrimination under section 9 of the Act.

The fact that the Act provides for a criminal penalty and expressly allows injunctive relief does not persuade us that an action for damages is not intended under the Act. In *Corgan*, the supreme court found an implied right to damages under the Real Estate Brokers and Salesmen License Act even though section 22 provided that individuals could bring an action to enjoin certain unlawful activities (Ill. Rev. Stat. 1977, ch. 111, par. 5740 (now codified, as amended, at 225 ILCS 455/22 (West 1992))). In *Kelsay*, the court stated that an express criminal penalty for violating a statute does not preclude an implied civil remedy. (*Kelsay*, 74 Ill. 2d at 184-85.) The court thought it conceivable that the employer would risk the threat of a criminal penalty in order to discharge an employee for bringing a worker's compensation claim. (*Kelsay*, 74 Ill. 2d at 185.) Here, too, we believe an employer may risk the possibility of being prosecuted for a petty offense under section 7 of the Act in order to discriminate against employees who exercise their rights to a reasonably smoke-free work environment. Thus, the recognition of a civil remedy is necessary to protect those employees who stand up for their rights.

Citing *Rhodes v. Mill Race Inn, Inc.* (1984), 126 Ill. App. 3d 1024, DynaPro argues that the Clean Indoor Air Act is a prohibitory statute rather than a remedial statute, and as such, no private right of action should be implied. In *Rhodes*, this court decided "[w]hether a civil action to impose strict tort liability may be based upon a violation of the Safety Glazing Materials Act" (430 ILCS 60/1 *et seq.* (West 1992)). (*Rhodes*, 126 Ill. App. 3d at 1025.) The only form of relief provided in the Safety Glazing Materials Act is a criminal penalty for violation of the Act. (430 ILCS 60/7 (West 1992); *Rhodes*, 126 Ill. App. 3d at

1026.) Because this court determined that the common-law action of negligence provided an adequate remedy for the plaintiff, no private right of action under the Act was implied. *Rhodes,* 126 Ill. App. 3d at 1027.

*Rhodes* is distinguishable for two reasons. First, the Clean Indoor Air Act is not strictly penal in nature. The Act provides for injunctive relief as well as a criminal penalty. Second, the prohibition against discrimination toward individuals who exercise their rights under the Act is expressly stated in the statute. Pechan cannot turn to the common law to provide an adequate remedy for statutory discrimination. In Pechan's situation, she will receive full redress for DynaPro's alleged discrimination only if she can seek damages for injuries incurred during her period of unemployment.

■ We also must discuss what effect, if any, the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)) may have on Pechan's ability to bring a discrimination claim against DynaPro under the Clean Indoor Air Act. Section 5 of the Workers' Compensation Act provides:

> "No common law or *statutory right to recover damages from the employer* \*\*\* for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act \*\*\*." (Emphasis added.) (820 ILCS 305/5 (West 1992).)

Section 11 provides:

> "The compensation herein provided \*\*\* shall be the measure of the responsibility of any employer \*\*\* for accidental injuries sustained by any employee arising out of and in the course of the employment \*\*\*." (820 ILCS 305/11 (West 1992).)

To escape the exclusive remedy rule under the Workers' Compensation Act, the plaintiff must prove, among other elements, that the injury was not accidental. *Copass v. Illinois Power Co.* (1991), 211 Ill. App. 3d 205, 210.

By analogy, we find the *Copass* case instructive. The reviewing court found that the complaint, alleging that the employer committed an intentional tort, was not barred because the Workers' Compensation Act provides remuneration for *accidental* injuries. "[O]ne who intentionally injures an employee should not be permitted to claim the injury was 'accidental' and use the Act as a shield from liability." (*Copass,* 211 Ill. App. 3d at 212.) Similarly, here, DynaPro's alleged act of discriminating against Pechan for exercising her rights under the Clean Indoor Air Act was intentional. We find that the Workers' Com-

pensation Act does not bar Pechan's claim of statutory discrimination under the Clean Indoor Air Act.

We next decide whether the trial court erred in granting summary judgment on Pechan's cause of action for discrimination. Keeping in mind the law as it pertains to motions for summary judgment, we hold that there are genuine issues of material fact such that the trial court erred in granting summary judgment on count V.

Pechan alleges that DynaPro discriminated against her by removing property from her office without her consent, preventing her from performing her usual tasks, assigning her to the menial task of data entry, and failing to reduce or eliminate smoking at its facility. Dyna-Pro argues that Pechan's deposition refuted these allegations such that summary judgment was proper.

A review of the portion of Pechan's deposition and her testimony at the hearing for injunctive relief in the record shows that Pechan did not have a written job description as office manager for DynaPro and that she performed a variety of tasks. She also testified that DynaPro did not take away her private office or her telephone. Pechan had told other employees at DynaPro that she wanted to work on computers, and after she filed her lawsuit, DynaPro assigned her to work on a computer. She further testified that it was her choice to stop coming to work until the judge ruled on a decision restoring her position as office manager.

As part of an affidavit attached to Pechan's response to Dyna-Pro's motion for summary judgment is a letter dated after Pechan filed suit and written by a DynaPro official. In pertinent part, the letter states:

> "In regard to recent events it has become necessary to address several aspects of your duties. The financial matters that you *were* responsible for, as they pertain to the firm, had an implied trust associated with them. This trust has been compromised, therefore requiring DynaPro, Inc. to reassign these duties elsewhere in the organization for the time being." (Emphasis added.)

■ Viewing Pechan's testimony and the materials attached to her affidavit in the light most favorable to her, we believe there is a genuine issue of material fact whether she was reassigned to different tasks as a result of exercising her rights under the Act. The memo from DynaPro officials expressly states that her duties were being reassigned due to "recent events," the critical event at that time being Pechan's lawsuit against DynaPro. The finder of fact should decide whether DynaPro's actions constituted discrimination under the Act.

Thus, we reverse the trial court's grant of summary judgment on count V.

### AUTHORIZED BATTERY

At issue is whether the trial court erred in dismissing Pechan's cause of action for the express authorization of a battery. Pechan posits that DynaPro authorized a battery when, with notice of the harm caused to her, it allowed employees to intentionally emit cigarette smoke into the office atmosphere that touched her without her consent. The act of smoking is intentional, and Pechan claims that smokers are aware that the emitted smoke travels to nonsmokers. She cites various cases in which employers have been liable for battery through the actions of their employers.

DynaPro contends that count II was properly dismissed pursuant to sections 2—615 and 2—619(a)(9) of the Code (735 ILCS 5/2—615, 2—619(a)(9) (West 1992)). DynaPro claims that Pechan failed to state a cause of action for battery because she has not alleged that the act of smoking was an affirmative act intended to cause unpermitted contact with her. DynaPro concludes that its employees did not intend that the smoke emitted touch nonsmoking employees. Further, DynaPro argues that smoking is a lawful act which does not rise to the level of a battery, and if the courts ruled that smoking is a battery, it would open the door to a flood of frivolous litigation.

Section 2—619.1 of the Code allows for combined motions under sections 2—615 and 2—619. (735 ILCS 5/2—619.1 (West 1992).) When a pleading is challenged by a motion to dismiss, all well-pleaded facts in the complaint are taken as true. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 69.) A reviewing court determines whether the allegations in the complaint state a cause of action upon which relief may be granted when viewed in the light most favorable to the plaintiff. (*Packard v. Rockford Professional Baseball Club* (1993), 244 Ill. App. 3d 643, 648.) No cause of action should be dismissed unless it is clearly apparent that the plaintiff will not recover under any proven set of facts. *DiBenedetto v. Flora Township* (1991), 219 Ill. App. 3d 1091, 1096.

Under section 2—619, a complaint may be dismissed when it is barred by an affirmative matter that defeats the claim. (735 ILCS 6/2—619(a)(9) (West 1992).) "The affirmative matter must be more than evidence offered to refute a well-pleaded fact." (*Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 925.) The motion should be supported by an affidavit if the grounds for dismissal do not appear on the face of the pleading. (*Magnuson v. Schaider* (1989), 183

Ill. App. 3d 344, 352.) "Such a motion admits all well-pleaded facts alleged in the complaint and reasonable inferences to be drawn from those facts." *Chicago Title & Trust Co.*, 238 Ill. App. 3d at 924.

Battery is defined as the willful touching of another person. (*Parrish v. Donahue* (1982), 110 Ill. App. 3d 1081, 1083.) The touching may be by the aggressor or a substance or force put in motion by the aggressor. (*Razor v. Kinsey* (1894), 55 Ill. App. 605, 614.) An action for battery does not depend on the hostile intent of the defendant, but on the absence of the plaintiff's consent to the contact. (*Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 893.) "To be liable for battery, the defendant must have done some affirmative act, intended to cause an unpermitted contact." (*Mink v. University of Chicago* (N.D. Ill. 1978), 460 F. Supp. 713, 717. But see *Nicholls v. Colwell* (1903), 113 Ill. App. 219, 222 (where the party inflicting the injury is not doing an unlawful act, the intent to harm is material).) Moreover, actions may be brought against an employer for intentional injuries "expressly authorized" by the employer. *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 464.

■■ The cause of action for express authorization to commit battery hinges on the intent of the employee-smokers. We must decide whether the employees who smoked did so with the intent that the emitted smoke touch nonsmokers such as Pechan. Although we are unable to ascertain a particular individual's intent or motivation when lighting a cigarette, the act of smoking is not performed generally with the intent to "touch" nonsmokers with secondhand smoke. As stated in *Razor*, "[t]here may be trespass to the person and liability for the actual damage, without intention to commit it, but not an assault and battery." *Razor*, 55 Ill. App. at 614.

Both parties cite to the case most closely analogous to the case at hand, *McCracken v. Sloan* (1979), 40 N.C. App. 214, 252 S.E.2d 250. There, the plaintiff brought a battery suit alleging that the defendant injured him by smoking cigars in his presence. The plaintiff had a history of being allergic to tobacco smoke, causing him severe respiratory problems. At a pretrial conference, the parties stipulated what the evidence would be in a light most favorable to the plaintiff. The trial court dismissed the case because the court concluded that the plaintiff could not prove a case sufficient to present to a jury. *McCracken*, 40 N.C. App. at 215, 252 S.E.2d at 251.

On appeal, the reviewing court affirmed and stated:

"[I]n a crowded world, a certain amount of personal contact is inevitable and must be accepted. Consent is assumed to all those ordinary contacts which are customary and reasonably

necessary to the common intercourse of life. Smelling smoke from a cigar being smoked by a person in his own office would ordinarily be considered such an innocuous and generally permitted contact." (*McCracken*, 40 N.C. App. at 217, 252 S.E. 2d at 252.)

Even though the defendant was on notice that the plaintiff considered the smoke hazardous to his health, the court found that an individual should not be allowed to erect a glass cage around himself and announce that all physical contact with him will result in liability. (*McCracken*, 40 N.C. App. at 217, 252 S.E.2d at 252.) Finally, although the court expressed no opinion about the result if the plaintiff could present evidence of physical injury, the court concluded that "[smelling tobacco smoke] is an apprehension of a touching and a touching which must be endured in a crowded world." *McCracken*, 40 N.C. App. at 217, 252 S.E.2d at 252.

The procedural posture of our case is significantly different from *McCracken*. Taking Pechan's well-pleaded facts as true, she has alleged the physical injuries that the plaintiff in *McCracken* failed to prove. However, we find the *McCracken* case significant not for its analysis of battery, but for its public policy discussion. As of this day and time, smoking remains a permitted activity in our society, although its glory days are waning. Smoking is a legal activity and not an act of battery because, generally, smokers do not smoke cigarettes with the intent to touch nonsmokers with secondhand smoke.

The remaining cases relied upon by Pechan are ones in which the unconsented touching obviously was intended. In *Mink* (460 F. Supp. 713), approximately 1,000 women were given diethylstil-bestrol (DES), a drug thought to prevent miscarriages, without their consent. (*Mink*, 460 F. Supp. at 715.) In *Kenner v. Northern Illinois Medical Center* (1987), 164 Ill. App. 3d 366, 369, a patient alleged a cause of action for battery based on being injected with Valium without authority from his treating physician. In both cases, there was no question that the person administering the drugs intended to place this medication in the plaintiffs' bodies. See also *Field v. Philadelphia Electric Co.* (1989), 388 Pa. Super. 400, 406, 565 A.2d 1170, 1172 (plaintiff alleged that company intentionally vented radioactive gases into area in which it knew he was working); *Cowan*, 22 Ill. App. 3d at 887 (victim alleged in complaint that the plaintiff struck him with his fists); *Smith v. Georgeoff* (1946), 329 Ill. App. 444, 446 (tavern owner threw plaintiff out of tavern).

Unlike the situations above, the act of smoking generally is not done with the intent of touching others with emitted smoke. Pechan

has not alleged that any of the office's smokers intended that she be exposed to their smoke, or that reasonable persons should have known that their smoke would have contacted Pechan in sufficient quantity to reasonably cause the damages claimed. Pechan has only alleged that some of the smokers continued to smoke after being informed that she suffered ill effects from secondhand cigarette smoke. We wish to clarify that we are not holding that one can never be battered by secondhand smoke. We hold that the facts alleged in this case do not give rise to a battery. Accordingly, the trial court did not err in dismissing count II of Pechan's amended complaint.

As count II was properly dismissed pursuant to section 2—615 of the Code, we will not address whether it was properly dismissed under section 2—619(a)(9) of the Code.

COMMON LAW NEGLIGENCE AND WILLFUL AND WANTON CONDUCT

Pechan next contends that the trial court erred in dismissing count III of her complaint alleging common-law negligence and willful and wanton misconduct. She claims that DynaPro breached its duty to prevent harm and injury to her, in other words, the duty to provide a reasonably safe workplace. She also claims that DynaPro consciously and recklessly disregarded her safety and health by allowing employees to emit tobacco smoke in the area where she worked. Further, she argues that the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 1992)) does not bar her action because her injuries from the smoke did not arise from employment.

DynaPro contends that count III was properly dismissed because it had no duty to provide a smoke-free workplace. As such, it claims that allowing smoking at its facility was neither an act of negligence nor gross negligence. DynaPro also claims that any injury Pechan may have sustained during her employment should be redressed under the Workers' Compensation Act.

 We will address first whether the Workers' Compensation Act bars Pechan's cause of action. If indeed the Workers' Compensation Act prohibits Pechan from suing DynaPro, it would act to bar both counts III and IV, the latter count being the statutory equivalent of count III.

"The Workers' Compensation Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." (Meerbrey, 139 Ill. 2d at 462.) As such, the Workers' Compensation Act prohibits common-law actions by employees against employers. (Meerbrey, 139 Ill. 2d at 462; 820 ILCS 305/5,

11 (West 1992).) The employee may bring a common-law cause of action against the employer if the employee proves:

> "(1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." (*Meerbrey*, 139 Ill. 2d at 463.)

Neither party disputes that Pechan's injuries were accidental. Indeed, the term "accidental" includes an event that occurs without design (*Meerbrey*, 139 Ill. 2d at 463) and encompasses an injury that develops gradually over time such as a repetitive trauma injury (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524). Our supreme court has stated that " 'accidental' *** is a comprehensive term almost without boundaries in meaning as related to some untoward event." (*Ervin v. Industrial Comm'n* (1936), 364 Ill. 56, 60.) We thus assume that Pechan's injuries here are "accidental" within the meaning of the Workers' Compensation Act.

An injury arises out of and in the course of employment when it occurs within the period of employment, at a place where the employee is reasonably expected to fulfill her duties, and while she is performing those duties. (*Kropp Forge Co. v. Industrial Comm'n* (1992), 225 Ill. App. 3d 244, 250.) When the injury originates from a risk incident to employment, there is a causal connection between the employment and injury and, for purposes of the Workers' Compensation Act, the injury has arisen out of employment. *Sekora v. Industrial Comm'n* (1990), 198 Ill. App. 3d 584, 589.

We will proceed to determine whether the injuries arose out of and in the course of her employment. Pechan relies on *Hill-Luthy Co. v. Industrial Comm'n* (1952), 411 Ill. 201, to support her argument that her injuries from secondhand smoke did not arise from her employment. There, an employee was injured when the head of a match he used to light a cigarette flew off and struck him in the left eye. (*Hill-Luthy*, 411 Ill. at 202.) The issue on appeal was whether the injury arose out of or in the course of his employment. (*Hill-Luthy*, 411 Ill. at 203.) In holding that the injury did not arise out of his employment, the court stated:

> "[The injury] arose from a cause having no relation to the nature of the employment. To entitle a claimant to obtain work[ers'] compensation benefits under the statute, his injury must be of such character that it may be seen to have had its origin in the nature of, or have been incidental to, the employment, or it must have been the result of a risk to which, by reason of

the employment, the injured employee was exposed to a greater degree than if he had not been so employed." *Hill-Luthy*, 411 Ill. at 203.

Generally, injuries suffered while employees are tending to personal matters have been found to be incidental to employment and, thus, arising in the course of employment. *All Steel, Inc. v. Industrial Comm'n* (1991), 221 Ill. App. 3d 501 (employee who slipped and fell on floor while running out to his burning car was within course of employment); *O'Donnell v. City of Chicago* (1984), 126 Ill. App. 3d 548 (fireman who fell on slippery stairs while getting a cup of coffee was within course of his duties); *Permanent Construction Co. v. Industrial Comm'n* (1942), 380 Ill. 47 (employees who drank typhoid-bacilli-contaminated water supplied by employer were accidentally injured in course of employment); *Hunter Packing Co. v. Industrial Comm'n* (1953), 1 Ill. 2d 99 (employee electrocuted with heater while using "toilet room" was within course of employment). But see *Williams v. Industrial Comm'n* (1967), 38 Ill. 2d 593 (employee who blacked out and fell while choking on a doughnut was not injured in course of employment).

The situation at hand involves a personal activity. However, in many of the above cases, the injured party was the one engaging in the personal activity. Our situation is more akin to employees who are injured by the acts of other employees. Again, most cases are not helpful because they involve assaults or attacks, which must be work related to be compensable under the Workers' Compensation Act. See *Graphic Group & K L W, Inc. v. Industrial Comm'n* (1988), 167 Ill. App. 3d 1041.

We turn to cases from other jurisdictions to determine if injuries from secondhand smoke may arise out of and occur during the course of employment. In *Iandiorio v. Kriss & Senko Enterprises, Inc.* (1986), 512 Pa. 392, 517 A.2d 530, the court held that the employer's control over employee smoking was sufficient to impose liability on the employer when a third party was burned by the match of an employee. Although *Iandiorio* is not a workers' compensation case, the court discussed when employee smoking may be considered incident to employment. It stated that "[t]he extent of control is a decisive factor in whether or not the personal act may be considered a part of or incident to the employment." (*Iandiorio*, 512 Pa. at 398, 517 A.2d at 533.) The court went on to reason:

"[T]he employer in this case[ ] not only knew that its employees smoked at work, but, in fact, dictated where employees should take breaks and smoke. This is sufficient control over

the employees' conduct to bring these activities within the scope of employment." *Iandiorio*, 512 Pa. at 399, 517 A.2d at 534.

In *Puffin v. General Electric Co.* (1945), 132 Conn. 279, 43 A.2d 746, an employee was awarded workers' compensation when a match used to light a cigarette set fire to her sweater. The court reasoned that a hazard is peculiar to employment when it is incident to and grows out of the employment conditions. (*Puffin*, 132 Conn. at 280, 43 A.2d at 747.) The employer provided a service room for smoking and allowed employees to wear clothing with any degree of flammability. The court concluded that the injury arose out of employment because the employer had actual or constructive knowledge of the conditions and permitted them to continue such that they became conditions of employment. *Puffin*, 132 Conn. at 280, 43 A.2d at 747.

In *Boullier v. Samsan Co.* (1966), 100 R.I. 676, 219 A.2d 133, again an employee was burned while attempting to light a cigarette. The court focused on whether there was a nexus or causal relationship between the injury and the employment. (*Boullier*, 100 R.I. at 679, 219 A.2d at 135.) A nexus exists if "the injury occurred within the period of employment, at a place where the employee might reasonably have been, and while he was reasonably fulfilling duties of his employment or doing something incidental thereto." (*Boullier*, 100 R.I. at 680, 219 A.2d at 136.) Because the court found such a nexus, it held that the employee's injuries arose out of and in the course of employment. *Boullier*, 100 R.I. at 681, 219 A.2d at 136. Contra *Coleman v. Cycle Transformer Corp.* (1986), 105 N.J. 285, 520 A.2d 1341 (employee's hair igniting when attempting to light cigarette during unpaid lunch break on employer's premises was an injury not arising out of employment); *Ogg v. Bill White Chevrolet Co.* (Okla. 1986), 720 P.2d 324 (employee who fell while retrieving cigarettes in a vehicle supplied by employer and parked in employer lot was not an injury arising out of and in course of employment).

We hold that Pechan's injuries from secondhand smoke emitted in DynaPro's facility were injuries arising out of and in the course of her employment. She sustained the injuries while performing her duties as office manager, not while she was satisfying her own personal needs. DynaPro was aware of Pechan's acute sensitivity to secondhand tobacco smoke and allowed its employees to continue smoking in an area of close proximity to Pechan. Based on the analysis in *Iandiorio*, DynaPro's control over the smoking habits of its employees made the act of smoking, and injuries related to it, within the scope of employment. Pursuant to the reasoning in *Puffin*, DynaPro's

knowledge and perpetuation of the actual conditions Pechan had to endure in DynaPro's facility transformed those conditions to conditions of employment, so that injuries caused by those conditions are compensable under the Workers' Compensation Act.

Moreover, as discussed in *Boullier*, there was a nexus between Pechan's injuries and her employment. Pechan sustained injuries from secondhand smoke during her employment. According to her complaint, the injuries occurred while working at her desk fulfilling the duties required of her as office manager. Thus, the injuries arose out of and in the course of her employment. Because the Workers' Compensation Act is the exclusive remedy for employees who are injured in the workplace (820 ILCS 305/5(a) (West 1992)), the trial court did not err in dismissing both counts III and IV of Pechan's amended complaint.

In the appendix of her appellate brief, Pechan supplies a decision and opinion of the commission for the Illinois Department of Rehabilitative Services. (*Witte v. Department of Rehabilitative Services* (Mar. 19, 1991), 88 W.C. 44629.) The commission affirmed the arbitrators' denial of worker's compensation benefits to an employee who suffered an allergic reaction from cigarette smoke. Unlike our situation, there are no allegations to determine whether the employer knew and/or sanctioned the act of smoking at its facility. The mere conclusion that benefits were denied in that case is unpersuasive without particular details regarding the employer's stance toward smoking at its facility.

### DEMAND FOR JURY TRIAL

Because count V, an action for damages for statutory discrimination, survives DynaPro's motion for summary judgment, we must decide DynaPro's issue on cross-appeal. DynaPro contends that the trial court erred in granting Pechan leave to file a late jury demand. DynaPro claims that Pechan waived her right by failing to file a demand with her original complaint. Counts II and III of Pechan's initial pleading were actions at law. DynaPro further claims that Pechan failed to establish good cause to excuse the untimely demand.

Pechan counters by arguing that count I of her original complaint sought equitable relief, so under section 2—1105 of the Code (735 ILCS 5/2—1105 (West 1992)), she could demand a jury upon the filing of her amended complaint. The amended complaint was filed after the trial court denied her motion for preliminary injunctive relief. She claims that the trial court was within its discretion in granting her motion to file the jury demand.

Section 2—1105 of the Civil Practice Law provides, in pertinent part:

"(a) A plaintiff desirous of a trial by jury must file a demand therefor with the clerk at the time the action is commenced. A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his or her answer. Otherwise, the party waives a jury. If an action is filed seeking equitable relief and the court thereafter determines that one or more of the parties is or are entitled to a trial by jury, the plaintiff, within 3 days from the entry of such order by the court, or the defendant, within 6 days from the entry of such order by the court, may file his or her demand for trial by jury with the clerk of the court." (735 ILCS 5/2—1105(a) (West 1992).)

The statute should be liberally construed in favor of allowing a trial by jury. *Pecoraro v. Kesner* (1991), 217 Ill. App. 3d 1039, 1045.

"A party seeking to file a late jury demand must show good cause for the delay and an absence of prejudice or inconvenience." (*Baldassari v. Chelsa Development Group, Inc.* (1990), 195 Ill. App. 3d 1073, 1077.) A showing of lack of prejudice is not a showing of good cause. (*Margolies v. Landy & Rothbaum* (1985), 136 Ill. App. 3d 635, 637.) Neither is inadvertence a basis for good cause. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 108.) Once good cause has been established, the trial court has discretion to determine whether to allow a late jury demand. (*In re Estate of Johnson* (1984), 129 Ill. App. 3d 22, 28.) The trial court's ruling on a motion to file a late jury demand will not be disturbed absent an abuse of discretion. *Brown v. Scotillo* (1984), 104 Ill. 2d 54, 59-60.

█ Pechan presented no grounds for the delay in filing her jury demand. She claims that section 2—1105 of the Code does not require a jury demand at the time the complaint is filed if it requests any equitable relief. Our interpretation of section 2—1105, even construing it liberally, allows either the plaintiff or the defendant to demand a jury after the filing of the complaint and answer only if (1) the pleading contains solely equitable actions and (2) after filing, the court orders that there are issues implicit in the equitable actions that may be addressed by a jury. Pechan's original complaint included two other actions at law, which were properly joined with the action in equity. (See 735 ILCS 5/2—614 (West 1992).) The fact that Pechan included an equitable action with actions at law does not allow her to delay in filing a jury demand.

When the trial court granted Pechan's motion to file a late jury demand, no good cause was shown. When defense counsel asked the

court what good cause was shown, the trial court stated that the social problem presented, the effects of secondhand cigarette smoke, should be heard by a jury. We hold that this is insufficient evidence of good cause to allow a late jury demand. Thus, we reverse the trial court's order granting Pechan's motion. The trial court will decide the remaining issues.

For the foregoing reasons, we affirm the trial court's dismissal of counts II, III and IV of plaintiff's amended complaint. We affirm the trial court's grant of summary judgment on count I. We reverse the trial court's grant of summary judgment on count V and remand for further proceedings. We also reverse the trial court's grant of Pechan's motion to file a late jury demand.

Affirmed in part; reversed in part and remanded.

WOODWARD and McLAREN, JJ., concur.