Dana **GRIESENBECK**, Plaintiff,

v.

The **AMERICAN TOBACCO COMPANY and ABC Co., Def Co., GHI Co., and John Doe** (fictitious named manufacturers and distributors of cigarettes and cigarette paper), Defendants.

**Civ. No. 95–1876 (DRD).**

United States District Court,
D. New Jersey.

July 13, 1995.

James F. Carney, Roseland, NJ, for Plaintiff.

Norris, McLaughlin & Marcus, William C. Slattery, Somerville, NJ, for Defendant Brown and Williamson Tobacco Corporation (Successor by merger to The American Tobacco Company).

## OPINION

DEBEVOISE, Senior District Judge.

Defendant Brown & Williamson Tobacco Corporation ("Brown & Williamson") moves to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion will be granted and the complaint dismissed.

### I. The Allegations of the Complaint

Plaintiff's complaint contains five counts as follows:

#### a. First Count

The first count alleges, *inter alia,* that "[o]n or about February 26, 1981, and for a long period of time prior thereto," the defendant was "in the business of manufacturing, selling, distributing and advertising cigarettes, including, but not limited to, the Pall Mall brand of cigarette and cigarette paper." (Compl., First Count ¶ 1.)[1] Plaintiff further alleges, "her infant brother and her parents, Caryl and James L. Griesenbeck, resided in a certain private family home located at 133 Buckingham Road in the Township of Montclair, County of Essex, State of New Jersey." (First Count, ¶ 2.)

On that date, plaintiff alleges that her mother "entered the home's sun porch area, in which was located a certain sofa or couch, and began to smoke a certain Pall Mall or other brand cigarette." (First Count, ¶ 3.) Subsequently, plaintiff's mother "left the aforementioned Pall Mall or other brand of cigarette she had been smoking on the aforementioned couch or sofa at her home, not

realizing that the cigarette was still burning and smoldering." (First Count, ¶ 5.)

The complaint further alleges that "[a]s a result" of defendant's "negligence in failing to design, manufacture, and distribute a fire safe self-extinguishing cigarette and in failing to adequately warn Mrs. Griesenbeck and other consumers of the dangers of smoking while seated on or situated near upholstery while fatigued or drowsy, a fire erupted in the home ... at about 1:20 a.m. on February 27, 1981." (First Count, ¶ 6.) According to the complaint, the fire "heavily damaged the home and resulted in the deaths" of plaintiff's parents and her brother and in "severe bodily injury to plaintiff ..., then age 5." (First Count, ¶ 6.)

The complaint also alleges that "[a]s a direct and proximate result" of the defendant's "negligence, plaintiff ... was severely and permanent injured and disfigured." (First Count, ¶ 7.) The first count of the complaint concludes with the claim that the plaintiff "attained the age of 18 years on March 4, 1993" and that therefore, "[t]his suit is commenced within two (2) years of plaintiff's 18th birthday." (First Count, ¶ 8.)

#### b. Second Count

The second count of the complaint incorporates the prior allegations and then alleges that "[b]y reason of" defendant's "aforesaid actions in designing, compounding, manufacturing, distributing, and placing into the stream of commerce the aforementioned Pall Mall or other brand of cigarette used by the late Caryl Griesenbeck," the defendant is "strictly liable to plaintiff for the plaintiff's injuries, pain and suffering." (Second Count, ¶ 2.)

#### c. Third Count

The third count of the complaint again incorporates the prior allegations and then alleges that the defendant "in the course of manufacturing, promoting, advertising, and distributing their cigarettes, made implied and/or express warranties as to the general

---

1. The complaint (¶ 1) also names "ABC Co., DEF Co., GHI Co. and John Doe" as fictitious defendants.

818

safety of their products for intended and foreseeable uses, including smoking of these tobacco products by consumers at home." (Third Count, ¶ 2.)

The complaint also alleges that the plaintiff's mother "relied upon" the defendant's "implied/or express warranties" and that on the "night of February 26, 1981 or the early morning of February 27, 1981," the defendant "breached the implied and/or express warranties of safety and fitness." (Third Count, ¶¶ 3–4.) "As a result" of these alleged "breach of warranties," the complaint claims, plaintiff was "severely and permanently injured and disfigured." (Third Count, ¶ 5.)

*d. Fourth Count*

The fourth count similarly incorporates the prior allegations. It further alleges that when the plaintiff's parents and brother "suffered severe and fatal bodily injuries" in the fire, the plaintiff, "then age 5, beheld the great and fatal harm which had then befallen them in her presence." (Fourth Count, ¶ 2.) "As a result of the foregoing, which was the result of the careless and negligent conduct" of the defendant, the complaint says, "plaintiff was caused to suffer severe mental and emotional anguish, shock, and trauma." (Fourth Count, ¶ 3.)

*e. Fifth Count*

The fifth and final count incorporates the prior allegations and further alleges that the defendant "acted with reckless and wanton disregard of the rights of plaintiff and [was] grossly negligent." (Fifth Count, ¶ 2.)

*II. Prior Actions*

A certification which accompanied the complaint stated that the terrible event which is the subject of the complaint was also the subject Civil Action Number L–50067–81 (in which plaintiff appeared through her guardian ad litem) in the New Jersey Superior Court. The amended complaint in that action—brought on behalf of the same plaintiff as here and involving the same event as

here—alleges that "[t]he fire was caused by the carelessness, recklessness and negligence of [her parents] Caryl Griesenbeck and/or James L. Griesenbeck." (Compl., First Count, ¶ 5.) Furthermore, the second count of that complaint alleges that John and Maryl Walker, the plaintiff's grandparents, "negligently served alcoholic beverages to [her mother] Caryl Griesenbeck and continued to serve such alcoholic beverages to her until and after she became intoxicated." (Second Count, ¶ 4.) The second count further alleges that "[a]s a result of the carelessness, recklessness and negligence of defendants John Y.G. Walker, Jr. and Maryl R. Walker, Caryl Griesenbeck was rendered incapable of alerting the fire department of the fire in her home, of taking measures to alert her family of the fire, and of safely evacuating them from the premises." (Second Count, ¶ 7.)

The trial court approved a settlement between plaintiff and the estate of her parents and dismissed the action which plaintiff brought against her grandparents. Affirming the order of dismissal the Appellate Division observed that plaintiff's mother had suffered from acute alcohol intoxication and ruled that the Walkers' conduct could not be deemed negligence or the proximate cause of the deaths and injuries resulting from the fire. *Griesenbeck v. Walker,* 199 N.J.Super. 132 (App.Div.), *certif. denied,* 101 N.J. 264 (1985).

*III. Defendant's Motion*

Plaintiff properly filed this action within two years of her eighteenth birthday in the Superior Court of New Jersey on February 24, 1995. Pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446, the case was removed to this court by The American Tobacco Company's successor corporation, Brown & Williamson.

Defendant moved to dismiss each count of the complaint.[2] It notes that the case is governed by the New Jersey Products Liability Act, N.J.S.A. 2A:58C–1 *et seq.,* ("the

2. Defendant alleges that it is not properly identified as the manufacturer or distributor of the cigarette in question. I will not consider this

alleged technical defect but will proceed to the merits of the motion for dismissal.

Act") and analyzes each count with reference to that Act.

As to the first count which alleges that defendant was negligent in failing to design, manufacture and distribute a fire-safe self-extinguishing cigarette and in failing to warn of the dangers of smoking while sitting on upholstery when drowsy, defendant contends that under the Act negligence claims are no longer viable in a products liability case in New Jersey.

The second count alleges strict liability under the Act. Defendant asserts that it cannot be held liable under any of the three ways specified in Section 2 of the Act: i) Plaintiff has not alleged that defendant deviated from the design specifications, formulae or performance standards; ii) There is no duty to warn when, as here, there was an obvious danger which was within the basic functioning or use of the product and, further, the "failure to warn" claim is preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1340; iii) Defendant is relieved of a design defect claim by Section 3(a)(2) of the Act which provides that "the manufacturer . . . shall not be liable if: . . . (2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended. . . ."

The third count alleges breach of implied and express warranties. Defendant asserts that common law claims for breach of warranties (except express warranties) are subsumed under the Act. Defendant asserts as to the express warranty claims that to the extent they sound in tort they are subsumed by the Act and to the extent they are premised on the Uniform Commercial Code plaintiff has failed to identify any express warranty that was breached.

Like the first count, the fourth count alleges negligence and, according to defendant, is subsumed under the Act and is not available as a separate cause of action. The fifth count alleges gross negligence, which, defen-

dant argues, is subsumed under the Act. Plaintiff responded to defendant's motion and agreed that the fourth and fifth counts sounding in negligence and the third count for breach of warranty should be dismissed.

Plaintiff observed that her first count "may not have been as artfully drawn as intended" but is designed to assert a failure to warn claim. Further, plaintiff contends that her second count asserts a claim for strict liability in tort for the defective design of defendant's product.

By the present posture of the case three issues remain: i) Does the complaint allege a claim under the Act for failure to provide an adequate warning? ii) If the answer is "yes," is the inadequate warning claim preempted by the federal Cigarette Labeling and Advertising Act? iii) Does the complaint allege a claim under the Act for defective design of defendant's product pursuant to N.J.S.A. 2A:58C–2(c)?

## IV. Discussion

### A. Legal Standard for Rule 12(b)(6) Motion

■ Pursuant to Rule 12(b)(6), a plaintiff's complaint must be dismissed for failure to state a claim if a defendant demonstrates "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 634 (3d Cir.1989); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). All allegations set forth in the complaint must be accepted as true, *see Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), and all reasonable inferences must be drawn in the plaintiff's favor. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991).

■ On a 12(b)(6) motion, the district court is limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum. *Hauptmann v. Wilentz,* 570 F.Supp. 351, 364 (D.N.J.1983), *aff'd without opinion,* 770 F.2d 1070 (3d Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986);

*Seevers v. Arkenberg,* 726 F.Supp. 1159, 1165 (S.D.Ind.1989) ("This court is not at liberty, however, to consider allegations which do not appear in the complaint, but which are averred only in legal briefs."). The Third Circuit, however, has held that a "court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss," without converting the motion into a motion for summary judgment, "if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

■ In ascertaining whether plaintiff has stated a cognizable claim, this court also examines the facts as alleged by plaintiff for any dispositive affirmative defenses. *See, e.g., ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 n. 9 (3d Cir.1994) ("It makes sense to allow an affirmative defense to be raised in a [Rule 12(b)(6) ] motion to dismiss 'because of the obvious advantage of raising a potentially dispositive issue by preliminary motion instead of requiring a responsive pleading....'" (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 351 (1990))). The New Jersey Products Liability Act, for example, provides several affirmative defenses to a design defect allegation, as discussed in Section IV.(D), *infra* pp. 20–24.

## B. Does the complaint allege a claim under the New Jersey Products Liability Act for failure to provide an adequate warning?

Plaintiff alleges that

it was the duty of defendants ... to warn consumers of dangers of smoking in bed or while sitting or reclining on upholstery while very fatigued or drowsy.... As a result of ... failing to adequately warn [plaintiff's mother] of the dangers of smoking while fatigued or drowsy, a fire erupted in the [plaintiff's] home.

(Compl. ¶¶ 4, 6.) The threshold issue to consider is whether defendants had a duty to warn under New Jersey law as alleged by plaintiff.[3]

In deciding whether plaintiffs have a cognizable failure to warn claim under New Jersey law, a court must predict how the New Jersey Supreme court would decide the case, *See, e.g., Repola v. Morbark Indus., Inc.,* 934 F.2d 483, 489 (3d Cir.1991), and for guidance "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand," *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

■ In New Jersey, product manufacturers have a general duty to warn of the dangers of using their products, and are not absolved of this responsibility simply because the danger might be obvious. *See Campos v. Firestone Tire & Rubber Co.,* 98 N.J. 198, 485 A.2d 305 (1984). Courts have adopted the rule, however, that manufacturers have no duty to warn of obvious dangers which are "so basic to the functioning or purpose of the product—for example, the fact that a match will burn—that a warning would serve no useful purpose." *Id.* at 208, 485 A.2d 305; *see Vallillo v. Muskin Corp.,* 212 N.J.Super. 155, 162 n. 4, 514 A.2d 528 (App.Div.1986).

For example, in *Wasko v. R.E.D.M. Corp.,* 217 N.J.Super. 191, 524 A.2d 1353 (Law Div. 1986), the court examined whether the manufacturer of explosive fuses had a duty to warn trained personnel of the explosive nature of the fuses. The court held that, "[t]here was no duty to warn ... because ... the dangers to the plaintiffs were so basic to the functioning or purpose of the product." *Id.* at 199, 488 A.2d 1038.

■ In *Hamilton v. Philip Morris,* No. L–039139–85 (Super.Ct.Law Div. May 19, 1987) (letter opinion), a New Jersey court determined that a cigarette manufacturer

---

**3.** It is unnecessary to examine the facts brought out in the previous action described above, *Griesenbeck v. Walker,* 199 N.J.Super. 132, 488 A.2d 1038 (1985), *supra* p. 818, because without a duty to warn, there cannot be any failure to warn. Whether any of plaintiff's acts constituted an intervening or superseding cause of the fire is therefore irrelevant to this inquiry.

had no duty to warn under substantially the same fact situation as the one under review here. In *Hamilton*, plaintiff's decedent died in a fire after falling asleep in bed while smoking. Plaintiffs argued that the defendant should have warned the decedent of the dangers of smoking in bed. Judge Dorothea Wefing, now an Appellate Division judge, ruled that:

> I cannot conclude that Philip Morris had a duty to warn Mr. Hamilton of the dangers attendant upon smoking in bed. While New Jersey does not follow the rule abrogating the duty to warn in the instance of a patent danger, we have adopted the rule that there is no duty to warn of an obvious danger which is inherent within the basic functioning or use of the product. I concur with defendant that the essential nature of a cigarette requires the application of fire and that there is thus an obvious danger which is inherent to the basic functioning of the product.

*Id.* at 2 (citations omitted). In my opinion the New Jersey Supreme Court would adopt the rule set forth in *Hamilton* and hold that there was no legal duty to warn plaintiff's mother of the dangers arising from a burning cigarette while in a flammable bed or couch since it is "an obvious danger which is inherent within the basic functioning or use of the product." *Id.*

The Oklahoma Supreme Court came to a similar conclusion in a case involving a smoker who had been burned after dropping a lit cigarette on the couch on which she had been sitting. In *Lamke v. Futorian Corp.*, 709 P.2d 684, 687 (Okla.1985), the Oklahoma Supreme Court declared that, "[i]t is common knowledge a lighted cigarette is potentially dangerous.... There was no duty on the part of defendants to warn the plaintiffs of an obvious fact. ... The trial court properly sustained the demurrers of the defendants to plaintiff's petition." *Id.* Although I am not bound by Oklahoma law, I am persuaded by the Oklahoma court's recognition of the obvious fact that a lighted cigarette can be dangerous.

Because burning is an inherent and obvious characteristic of a functioning cigarette, and the dangers associated with a burning object are well-known to adults, I conclude that the defendant had no duty to warn defendant's mother of the dangers associated with burning cigarettes. Defendant's Rule 12(b)(6) motion to dismiss will be granted as to this count.

*C. Assuming, arguendo, that New Jersey state law required defendants to warn defendant's mother, would the federal Cigarette Labeling and Advertising Act preempt that requirement?*

■ The United States Supreme Court examined the preemption effect of federal legislation on state claims based on cigarette packaging, advertising, and promotion in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone*, the family of a long-time smoker who died of lung cancer sued a cigarette manufacturer under a variety of state law tort and contract theories, including the defendants' failure to warn plaintiff of the adverse health effects of smoking. The defendant cigarette manufacturers asserted that such claims were preempted by the 1965 Cigarette Labeling and Advertising Act ("1965 Act") and its 1969 Amendments ("1969 Act") which required cigarette packaging and advertising to include mandated health warnings.

The 1965 Act contained two express preemption provisions:

§ 1334. Preemption.

(a) No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package.

(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labelled in conformity with the provisions of this Act.

15 U.S.C.A. § 1334. The 1965 Act was amended in 1969 to include the following modification to the second part of the preemption provision pertaining to advertising:

§ 1334. Preemption.

. . . .

(b) No requirement or prohibition based on smoking and health shall be imposed

under state law with respect to the advertising or promotion of any cigarettes the packages of which are labelled in conformity with the provisions of this Act.

*Id.*

The district court granted plaintiff's motion to strike defendant's preemption defense on the theory that while the preemption provision protected cigarette manufacturers from being "subjected to varying requirements from state to state," *Cipollone v. Liggett Group, Inc.*, 593 F.Supp. 1146, 1148 (D.N.J.1984), it did not preempt common law claims. *Id.* at 1153–70.

The Third Circuit Court of Appeals also rejected defendant's arguments that the 1965 and 1969 Acts expressly preempted common law claims, but reversed the district court on the grounds that where common law actions were based on a duties other than those mandated by Congress, those common law claims conflicted with the federal act and were impliedly preempted. *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 187 (3d Cir. 1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987). The Court of Appeals remanded the case to the district court to determine which claims were preempted under the conflict analysis. *Id.* On remand, the district court ruled that claims based on failure to warn after 1966, when the Acts came into effect, were preempted, but pre–1966 claims were not. *Cipollone v. Liggett Group, Inc.*, 649 F.Supp. 664, 669–72 (D.N.J.1986). The Court of Appeals affirmed this ruling, *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 554 (3d Cir. 1990), and the United States Supreme Court granted certiorari to consider the preemptive effect of the 1965 and 1969 Acts.

A majority on the Supreme Court reversed the Third Circuit opinion that the 1965 Act preempted common law claims,[4] but a plurality affirmed the portion of the opinion asserting that the 1969 Act expressly preempted most common law claims, including failure to warn. The plurality held that the 1969 Act expressly preempted common law duties to the extent they relied on a " 'state law requirement or prohibition ... with respect to

... advertising or promotion.' " *Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621–22. (paraphrasing the language of the preemption section of the 1969 Act). The plurality opinion indicated that common law failure to warn claims based on "testing or research practices" were not preempted because the statute's express preemption language referred only to advertising and promotion. *Id.*

Although this reasoning was joined only by a plurality, the dissenters Justices Scalia and Thomas asserted that all common law claims were preempted by the 1969 Act under a different rationale. *Cipollone,* 505 U.S. at 548, 112 S.Ct. at 2634 (Scalia, J., dissenting); *see also Kenepp v. American Edwards Laboratories,* 859 F.Supp. 809, 813 n. 3 (E.D.Pa. 1994) (explaining that "six justices agreed that the language of the Cigarette Act preempted the common law tort claims[, including failure to warn]"). While the dissenters did not agree with the analysis of the plurality in concluding that the 1969 Act preempted failure to warn claims, they did agree that the claims were ultimately preempted. Furthermore, the Third Circuit has acknowledged the binding nature of *Cipollone's* plurality opinion. *See Michael v. Shiley, Inc.,* 46 F.3d 1316, 1322 n. 3 (3d Cir.1995).

Thus, *Cipollone* clearly requires that plaintiff's failure to warn claims be dismissed as preempted to the extent they rely on a showing that defendant's advertising or promotion was insufficient or improperly warned plaintiff. As the Court opined in *Cipollone:*

Petitioner's claims are pre-empted to the extent they rely on a state law 'requirement or prohibition ... with respect to ... advertising or promotion.' Thus, insofar as claims under either failure to warn theory require a showing that respondents' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted.

*Cipollone,* 505 U.S. at 524, 112 S.Ct. at 2621–22.

---

4. Since the fire which is the subject of this action occurred in 1981, only the 1969 Act is at issue.

Plaintiff's theory of the case asserts that defendant should have warned her mother somehow, presumably through some variety of mass-notification. A company's attempt to notify its mass market of anything, whether a danger warning or a marketing effort, is considered "advertising or promotion" under the general usage of those terms, and a state cannot impose requirements on such activities without running afoul of the clear language of *Cipollone. Id.*

Plaintiff asserts in her Reply Brief that *Cipollone* applies to advertisements and promotions pertaining only to smoking and health rather than to the safety issue of self-immolation through negligence as encountered here.

The threat of self-immolation arising from the negligent care of one's cigarette is a "health risk" under any common sense construction of the phrase. Although Plaintiff's argument seems to be that the phrase "health risk" applies only to internal risks such as cancer and emphysema, she does not provide any support for that contention. Courts generally make the "assumption that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992) (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990)). It is better to adopt the ordinary meaning of the phrase "health risk" unless shown some reason for making another, less obvious interpretation.

Assuming again, *arguendo,* that plaintiff is correct and the 1969 Act does not expressly preempt self-immolation as a health issue, then the express preemption analysis in *Cipollone* does not apply and an implied preemption analysis must be made instead. Whether the 1969 Act preempts this particular failure to warn claim may be determined "implicitly from the statute's structure and purpose." *Michael v. Shiley, Inc.,* 46 F.3d 1316, 1322 (3d Cir.1995) (quoting *Morales v. Trans World Airlines,* 504 U.S. 374, 381, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992)); *see also Cipollone,* 505 U.S. at ——, 112 S.Ct. at 2617. If plaintiff's contention that the 1969 Act's express preemption clause does not apply to her claims is accepted, it is necessary to determine whether preemption is necessary to prevent the state law from being "an obstacle to the accomplishment and execution of the full objectives of Congress." *Freehold Cogeneration v. Board of Regulatory Comm'rs,* 44 F.3d 1178, 1190 (3d Cir.1995) (quoting *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986)).

Section 2 of the 1965 Act, which was left unchanged by the 1969 Amendments, lists one of its purposes as:

> § 1331. Congressional Declaration of Policy and Purpose

> It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

> (1) . . . .

> (2) commerce and the national economy may be ... (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C.A. § 1331. *See generally Cipollone,* 505 U.S. at 511–18, 112 S.Ct. at 2615–18 (discussing history and purpose of Act and Amendments).

■ Assuming that plaintiff is correct that the 1969 Act's express preemption provision in section 1333 regarding "smoking and health" does not refer to the smoking and health issue before us, she cannot successfully assert that the language in section 1331(2)(B) quoted above has the same effect. Section 1331(2)(B) of the 1969 Act says the purpose of the legislation is to avoid confusion surrounding "*any* relationship between smoking and health," as opposed to the simpler "smoking and health" language in section 1333 (emphasis added). The clear language of section 1331(2)(B) says that the federal warnings are mandated in order to prevent a multiplicity of health-related warnings. Instead, the statute seeks to encourage standardized health-related warnings.

824

Applying this analysis to the facts as alleged by plaintiff shows that her claims are impliedly preempted and must be dismissed. Plaintiff alleges that defendant is liable for not warning her of the dangers of "smoking in bed or while sitting or reclining on upholstery while fatigued or drowsy," (Compl., ¶ 4.), presumably through its activities connected with its alleged "business of manufacturing, selling, distributing, and advertising cigarettes," (Compl., ¶ 1.) According to the plaintiff's allegations, advertising is the only alleged activity of the defendant which could have forwarded a warning; warnings cannot be conveyed through manufacturing, selling, or distribution. Any additional state law warning requirements would consequently present a "diverse, nonuniform, and confusing cigarette labeling" scheme in conflict with the 1969 Act's stated purpose to avoid such confusion with respect to "any relationship between smoking and health." 15 U.S.C.A. § 1331. Plaintiff's failure to warn claim must be preempted, then, because it is premised on a duty to provide a warning which conflicts with the purpose of the Federal Cigarette and Advertising Act.

*D. Does the complaint allege a claim under the New Jersey Products Liability Act ("the Act") for defective design of defendant's product?*

■ Plaintiff claims that a defect in the cigarette's design caused the tragic fire. Plaintiff also claims that the cigarette's propensity to burn and smolder at a temperature high enough to ignite upholstery was not necessary for the cigarette to function, that alternative, safer designs were available, and that defendants are strictly liable for the design defect. Defendant, on the other hand, asserts that the well-known and inherent nature of cigarettes to burn satisfies the requirements of the "consumer expectation" affirmative defense under N.J.S.A. 2A:58C–3(a)(2).

The Act provides two affirmative defenses to design defect claims, the consumer expectation defense under 3(a)(2) proffered by defendant, and the "state of the art" defense under 3(a)(1) which would examine whether a self-extinguishing cigarette was a feasible alternative as the plaintiff claims. Since defendant does not raise the "state of the art" defense, allegations pertaining to self-extinguishing cigarettes are irrelevant to the motion under consideration. *See infra* note 5 and accompanying text.

As stated above, in deciding whether plaintiff has a cognizable design defect claim and whether defendants have an effective "consumer expectation" affirmative defense, this court must predict how the New Jersey Supreme court would decide the case, *See, e.g., Repola,* 934 F.2d at 489, and for guidance "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand," *McKenna,* 622 F.2d at 657.

The New Jersey Supreme Court examined a manufacturer's liability for design defects and the availability of the consumer expectation affirmative defense most recently in *Roberts v. Rich Foods, Inc.,* 139 N.J. 365, 382, 654 A.2d 1365 (1995). The defendant in *Roberts* manufactured an on-board computer for use in trucks to track their mileage and tolls. Plaintiff alleged that the defendant truck driver had been distracted by entering data into the computer while driving the truck and had crashed into the plaintiff's car as a result. The court held that "the danger of diverting one's eyes from the road is open and obvious to any driver and hence 'known to the ordinary consumer or user,'" thereby satisfying the 3(a)(2) affirmative defense. *Id.* at 383, 654 A.2d 1365 (quoting elements of the consumer expectation defense provided by N.J.S.A. 2A:58C–3(a)(2)).

The court's analysis in *Roberts* indicates that in order to establish a claim, plaintiff must prove by a preponderance of the evidence that defendant manufactured and distributed a product which was "not reasonably fit, suitable or safe for its intended purpose, because it ... was designed in a defective manner." *Roberts,* 139 N.J. at 376–77, 654 A.2d 1365; *see also* N.J.S.A. 2A:58C–2.

*Roberts* also indicates that a "reasonable consumer expectation" affirmative defense is available to the defendant under N.J.S.A. 2A:58C–3(a)(2). *Roberts,* 139 N.J. at 377, 654

A.2d 1365. To use this defense, defendant must prove by a preponderance of the evidence that

> the unsafe aspect of the product ... is an inherent characteristic of the product ... which would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended...."

*Id.*[5]

It can hardly be disputed that adults of legal smoking age, such as plaintiff's mother at the time of the accident, know that cigarettes must burn in order to be smoked. Nor can an adult claim to be ignorant of the dangers associated with burning items such as cigarettes. In *Hamilton v. Philip Morris,* L–039135–85, at 2 (Super.Ct.Law Div. April 6, 1988) [6] Judge Wefing stated that the burning aspect of cigarettes is a danger sufficiently well-known for the consumer expectation affirmative defense. The court asserted that "it cannot be doubted that the ability of a cigarette to burn is both 'known to the ordinary user' and 'is an inherent characteristic' of it." *Id.* (quoting elements of the consumer expectations defense provided by N.J.S.A. 2C:58C–3(a)(2))'. Although this opinion was not published and ultimately held that the Act was not applicable since the claim was filed before the Act's passage, it reflects the views of a judge now in the Appellate Division and is indicative of what New Jersey courts might decide were they to review the claims of the plaintiff.

Other jurisdictions have come to largely the same conclusion. In *Lamke,* 709 P.2d at 687, the Supreme Court of Oklahoma applied a similar consumer expectation test and upheld the lower court's dismissal of the action. The Oklahoma court ruled that "[I]t is common knowledge a lighted cigarette is poten-

tially dangerous.... The trial court properly sustained the demurrers of the defendants to plaintiff's petition." Finally, in *Frulla v. Philip Morris Inc.,* No. 87–2660, at 4 (W.D.Tenn. Jan. 10, 1990), a district court in Tennessee ruled that "a lit cigarette's ability to start a fire, particularly if left unattended, is well known and part of the community's common knowledge".

Thus, the facts as alleged by plaintiff show that the defendants can assert the consumer expectation defense successfully. *Roberts,* 139 N.J. at 378, 654 A.2d 1365 ("[B]ecause 3a(2) is an absolute defense that product-liability defendants will invariably raise, a plaintiff will rarely be able to go forward without addressing it"); *see also, ALA, Inc.,* 29 F.3d at 859 n. 9 (Third Circuit allowing affirmative defenses to be considered on a motion for dismissal under Rule 12(b)(6)). Plaintiff has alleged a set of facts for which a successful affirmative defense can be raised and defendants' Rule 12(b)(6) motion to dismiss must be granted as to this claim as well.

### Conclusion

Because plaintiff has not alleged a claim upon which relief can be granted under the New Jersey Products Liability Act, defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) will be granted and the complaint dismissed.

---

**5.** Although there is an exception to the consumer expectation defense for products from which "the defendant could have eliminated the danger without eliminating an inherent characteristic of the product," *Roberts v. Rich Foods, Inc.,* 139 N.J. 365, 382, 654 A.2d 1365 (1995), it applies only to "dangers posed by products *such as machinery or equipment,*" N.J.S.A. 2A:58C–3(a)(2) (emphasis added), and not to "common products, such as foods and other consumer products," Assembly Insurance Committee Statement

on New Jersey Senate Bill No. 2805 (June 22, 1987), *reprinted in* William A. Drier, *Analysis: 1987 Products Liability Act,* 41 Rutgers L.Rev. 1279 app. B at 1322–23 (1989); *see also Roberts,* 139 N.J. at 384, 654 A.2d 1365 (applying alternative design exception to an on-board truck computer).

**6.** A different opinion in the *Hamilton* case was discussed, *supra* pp. 820–21.