**Roselyn WOLPIN, Plaintiff,**

v.

**PHILIP MORRIS, INC.,
et al., Defendants.**

**No. 96–1781–CIV.**

United States District Court,
S.D. Florida.

Aug. 18, 1997.

---

Norwood Wilner, Jacksonville, FL, Jonathan Andry, New Orleans, LA, for Plaintiff.

Norman Coll, Miami, FL, Edward Moss, Miami, FL, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE COMPLAINT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss and Motion to Strike Complaint, filed May 13, 1997.

Plaintiff filed a response on June 27, 1997. Defendants filed a reply on July 8, 1997.

## I. Factual Background

This is a second-hand smoke[1] case brought by Plaintiff, Roselyn Wolpin, against Defendants, Philip Morris, Inc. and Brown & Williamson Tobacco Corp. Plaintiff alleges that she suffers from severe emphysema and an array of other injuries as a result of prolonged exposure to second-hand smoke from tobacco products designed, manufactured, advertised, and marketed by Defendants. Plaintiff alleges several bases for liability including negligence, strict liability, and civil conspiracy. Defendants moved to dismiss and strike various portions of Plaintiff's Complaint on the grounds that: (1) federal law preempts claims arising from Defendants' failure to disseminate information; (2) Plaintiff has not stated a claim for civil conspiracy; and (3) the paragraphs alleging Defendants' failure to test are redundant and immaterial. Specifically, Defendants seek to dismiss paragraphs 16a–16c, 16g–16i, and 18c–18d of Counts I and II on the ground of preemption, dismiss Count III for failure to state a claim, and strike paragraphs 14e, 15d, and 16d as redundant and immaterial.

## II. Legal Standard

"[D]ismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." 5A Wright & Miller, *Federal Practice and Procedure* § 1357; *see also Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir.1986). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

## III. Analysis

### A. Preemption

Defendant claims that the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U.S.C. § 1331 (1965), preempts claims based on state law duties to disseminate information relating to smoking and health. The FCLAA requires cigarette manufacturers to include the statement "Warning: The Surgeon General Has Determined That Cigarette Smoking is Dangerous to Your Heath" on all packaging, labeling, advertising, and promotional material. In addition, the FCLAA expressly preempts any "requirement or prohibition based on smoking and health ... imposed under state law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of [the FCLAA]." 15 U.S.C. § 1334(b). Congress stated two policies and purposes of the FCLAA:

> (1) The public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and (2) commerce and the national economy may be ... not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations ....

15 U.S.C. § 1331.

In *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court defined the scope of the FCLAA's preemptive effect. The Court held that "[t]he central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising and promotion.'" *Id.* at 523–24, 112 S.Ct. at 2621. Applying the test, the Court ruled that: (1) claims arising from failure to warn or neutralization of federally mandated warnings, whether based on statutory law or common law, were preempted; (2) state law damages actions were not preempted; and (3) intentional fraud and misrepresentation were not preempted. *Id.* at 525–29, 112 S.Ct. at 2622–24. The fraud claims were not preempted because the state law was not a requirement based on "smoking and health" so much as a

---

1. Second hand smoke is also known as "environ- mental tobacco smoke" or "ETS."

requirement based on the duty not to deceive. *Id.* at 529, 112 S.Ct. at 2624.

In *Sonnenreich v. Philip Morris, Inc.*, 929 F.Supp. 416, 419 (S.D. Fla. 1996), this court interpreted the FCLAA broadly, holding:

> Any attempt by Defendants to notify its customers of the dangers of smoking would employ the same techniques as a traditional advertising or promotional campaign, save with the goal of discouraging smoking. Lobbying, seminars, and public service announcements are all undertaken with the effect of promoting and fostering a product or an ideology.

*See also Griesenbeck v. American Tobacco Co.*, 897 F.Supp. 815, 823 (D.N.J.1995) ("A company's attempt to notify its mass market of anything, whether a danger warning or a marketing effort, is considered 'advertising or promotion' ").

The instant case presents an issue of first impression to this Court: Whether the FCLAA preempts claims arising from a tobacco company's failure to warn non-smokers about the ill effects of second-hand smoke.[2] For the purposes of this inquiry, the Court will assume, *arguendo*, without ruling, that cigarette manufacturers have a state law duty to warn non-consumers about the second-hand effects of cigarette smoke.

### 1. Express Preemption

■ To determine whether a state law duty to warn bystanders is expressly preempted by the FCLAA, this Court must make a "straightforward" determination as to whether the duty is a "requirement ox, prohibition based on smoking and health ... with respect to ... advertising and promotion." *Cipollone*, 505 U.S. at 523–24, 112 S.Ct. at 2621–22. Bearing in mind that Congressional purpose is the "ultimate touchstone" of a preemption inquiry, *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978), the

Court concludes that the FCLAA's preemption of state regulations based on "smoking and health" does not preempt regulations involving second-hand smoke. Upon a "straightforward" inquiry, the Court finds it unlikely that Congress intended the word "smoking" to mean inhaling second-hand smoke. When one is "smoking," one is actively inhaling from a cigarette, not passively breathing second-hand smoke from the air.

In addition, the FCLAA, itself, indicates that "smoking" does not refer to second-hand smoke inhalation. First, the FCLAA never mentions the terms "second-hand smoke," "environmental tobacco smoke," or "ETS." Nor do the terms appear anywhere in the legislative history of the FCLAA. Although the Congressional Session Reports relating to the FCLAA and its 1969 amendments extensively detail the dangers of cigarette smoking, they do not refer to or even mention the harms associated with second-hand smoke. *See* H.R.Rep. No. 89–499, 1965 U.S.C.C.A.N. 2350 (relating to the 1964 enactment of the FCLAA) S.Rep. No. 91–566, 1970 U.S.C.C.A.N. 2652 (relating to the 1969 amendments). The Congressional reports make clear that the purpose of the FCLAA is not to inform non-smokers of the hazards of breathing second-hand smoke but rather to inform smokers and potential smokers of the dangers of actively smoking: "[W]hile the committee believes that the individual must be safeguarded in his freedom of choice—that he has the right to choose to smoke or not to smoke—we believe equally that the individual has the right to know that smoking may be hazardous to his health." H.R.Rep. No. 89–449, 1965 U.S.Code Cong. & Admin.News pp. 2350, 2352.

In deciding to amend the FCLAA to strengthen the language of the label. warning, Congress "accept[ed] the judgment that excessive smoking is dangerous to the health

---

2. Defendant provides three unpublished cases to support the proposition that the FCLAA preempts failure to warn claims in second-hand smoke cases: *Wilson v. American Tobacco Co.*, No. 1069 (S.D.Ohio Sept. 20, 1989); *Butler v. R.J. Reynolds*, No. 92–73–361, Circuit Ct., Hinds County, Mississippi (Jan. 25, 1992); and *Bluitt v. R.J. Reynolds*, No. 3:94 CV 122–R (N.D.Tex. Sept. 26, 1994). The Court finds these cases unpersuasive. In *Wilson*, a prison inmate claimed that cigarette manufacturers should label cigarette packages with a warning that cigarette smoking is offensive to Muslims. The court dismissed the case on preemption and other grounds. The *Butler* court found that the broad scope of the FCLAA included second-hand smoke cases but provided no analysis. The *Bluitt* decision is merely a short order granting judgment on the pleadings, without further analysis.

of the *particular smoker* . . . ." Senate Rep. No. 91–566, U.S.Code Cong. & Admin.News 1970 at pp. 2652, 2664 (emphasis added). Accordingly, Congress decided to preempt state regulations relating to "smoking," not second-hand smoke, as evidenced by the Senate Report:

> The state preemption of regulation or prohibition with respect to cigarette advertising is narrowly phrased to preempt only state action based on smoking and health. It would in no way affect the power of any state or political subdivision of any state with respect to the taxation or the sale of cigarettes to minors, or the *prohibition of smoking in public buildings,* or similar police requirements or prohibitions in the advertising of cigarettes.

Senate Rep. No. 91–566, U.S.Code Cong. & Admin.News 1970 at pp. 2652, 2663 (emphasis added). The FCLAA cannot be construed to preempt state regulation of second-hand smoke when the Act was never intended to address the problem of second-hand smoke:

> Preemption is based on the fact that the packages contain a warning. However, there is no warning with respect to exposure to ETS. All of the warnings relate to active smoking. Accordingly, a preemption argument should not be available to tobacco companies to defend claims brought by children of smokers.

David B. Ezra, *Sticks and Stones Can Break My Bones, but Tobacco Smoke Can Kill Me: Can We Protect Children from Parents that Smoke,* 13 St. Louis U. Pub.L.Rev. 547, 586 (1994).

Further evidence that Congress did not intend the word "smoking" to encompass breathing second-hand smoke is Congress's use of the terms "second-hand smoke," "environmental tobacco smoke" and "ETS" in proposed legislation explicitly regulating second-hand smoke. *See, e.g.,* The Tobacco Product Education and Health Protection Act, S.Rep. No. 101–338, 1990 WL 258956 (Leg.Hist.); Ban on Smoking in Federal Buildings Act, H.R.Rep. No. 103–298(I), 1993 WL 420723 (Leg.Hist.). In these proposed statutes, Congress used the terms "second-hand smoke," "environmental tobacco smoke," and "ETS" instead of relying on the term "smoking" when referring to the passive inhalation of second-hand smoke.

The Court also concludes that Congress did not intend the FCLAA's preemption of state regulation of "advertising and promotion" to preempt state requirements of warnings to bystanders. Legislative history indicates that the FCLAA's regulation of "advertising and promotion" is geared toward warning the individual user of the harms of smoking, not toward warning non-smokers of the harms of second-hand smoke. S.Rep. No. 91–566, at 2664. Labeling is geared toward informing consumers about a product, and advertising is geared toward informing potential consumers. *See Kordel v. United States,* 335 U.S. 345, 348, 69 S.Ct. 106, 108–09, 93 L.Ed. 52 (1948) (labeling materials are for those who purchase or handle the product); *New York State Pesticide Coalition, Inc. v. Jorling,* 874 F.2d 115, 120 (" 'labeling' comprises those materials designed to accompany the product through the stream of commerce to the end user, but not those designed to notify . . . the general public"). Obviously, non-smokers have no interest in, and little if any contact with, cigarette labels or advertisements.

It would be unfair to deny the nonsmoking segment of society the benefit of state law protection when the federal government neither intended to nor in fact afforded that class of people protection:

> [A] court's reliance on the notice of risks given to smokers via the Labeling Act clearly cannot apply to non-smokers, as they are:not the ones who are warned through the contents of a cigarette label. . . . The Supreme Court has held that state law claims based on advertising and promotion are pre-empted by the Labeling Act. However, the Labeling Act does not provide sufficient warning to non-smokers of the risks to their health attributable to second-hand smoke.

Cindy L. Pressman, *"No Smoking Please:" A Proposal for Recognition of Non–Smokers' Rights Through Tort Law,* 10 N.Y.L. Sch. J. Hum. Rts. 595, 614–15 (1993).

Even courts that have interpreted the FCLAA's prohibition against state regulation of "advertising and promotion" broadly limit

the prohibition to regulations involving notification to cigarette consumers as opposed to non-consumers. *See, e.g. Sonnenreich*, 929 F.Supp. at 419 ("any attempt by Defendants to notify *its customers* of the dangers of smoking would employ the same techniques as a traditional advertising or promotional campaign") (emphasis added); *Griesenbeck*, 897 F.Supp. at 823 ("A company's attempt to notify *its mass market* of anything ... is considered 'advertising or promotion'") (emphasis added).

A similar analysis has been employed by courts addressing the preemptive effect of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, on state mandated warnings to non-consumers of the dangers of second-hand exposure to chemicals. As Defendants point out in their brief, FIFRA "contains a preemption provision that mirrors that of the Labeling Act." (Defendants' Memorandum p. 7 n. 6); *Papas v. Upjohn Co.*, 985 F.2d 516, 517 (11th Cir. 1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993) ("Not even the most dedicated hair-splitter could distinguish" between the FCLAA provision and the FIFRA provision).

The courts held that while FIFRA does preempt state regulations involving warnings to consumers, including non-label warnings like point of sale signs, *see Papas*, 985 F.2d 516, it does not preempt regulations requiring the provision of information to non-consumers who may be exposed to the secondary effects of chemicals. *See Jorling*, 874 F.2d at 119 (finding that FIFRA did not prevent a New York regulation requiring warning bystanders of harmful effects of poisonous chemicals); *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 603, 111 S.Ct. 2476, 2480–81, 115 L.Ed.2d 532 (1991) (holding that FIFRA did not preempt state regulation requiring fumigators to post placards to warn bystanders); *Burt v. Fumigation Service & Supply Inc.*, 926 F.Supp. 624, 631 (W.D.Mich.1996) (holding that FIFRA did not preempt state requirement of coloring agent to warn bystanders of existence of toxic substance). The Eleventh Circuit has endorsed the holding in *Jorling*, stating that "Jorling is instructive about the respective authority of the state and federal governments to regulate pesticides under FIFRA."

*Papas*, 926 F.2d at 1025 (citation omitted). By analogy, the FCLAA's preemption of state regulation of warnings to smokers should not have the effect of preempting state-imposed duties to warn bystanders about the dangers of second-hand smoke. Thus, the FCLAA does not expressly preempt a claim based on a state-created duty to warn non-smokers of the harmful effects of second-hand smoke.

### 2. Implied Preemption

Legislative intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In the absence of an express preemption, state law is preempted when it conflicts with federal law, *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Devel. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), or when federal law so completely occupies a field "as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

The legislative history of the FCLAA shows that the purpose of the FCLAA was to provide warning of the dangers of smoking cigarettes to smokers and potential smokers and to prevent conflicting advertising on that subject. A state duty to warn non-smokers about second-hand smoke does not conflict with that purpose. Moreover, because Congress did not even mention second-hand smoke anywhere in the FCLAA, they could not have meant to completely occupy that field. Consequently, Plaintiff's failure to warn claims are not impliedly preempted by the FCLAA.

### B. Civil Conspiracy

Defendants seek to dismiss Plaintiff's civil conspiracy claim as legally and procedurally deficient. Under Florida law, a claim for civil conspiracy must allege the following: (1) a conspiracy between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the doing of some

overt act in the pursuance of a conspiracy; and (4) damage to plaintiff as a result of the acts done under this conspiracy. *Florida Fern Growers Assoc., v. Concerned Citizens of Putnam County,* 616 So.2d 562, 565 (Fla. Dist.Ct.App.1993). While Defendants do not contest that Plaintiff has alleged the first, third, and fourth elements of civil conspiracy, they assert that Plaintiff has not plead adequately an underlying unlawful act.

 Defendants' first argument is that Plaintiff may not allege negligence as the underlying unlawful act. Defendant is correct. "Logic and case law dictate that a conspiracy to commit negligence is a non sequitur." *Sonnenreich,* 929 F.Supp. at 419. It appears from the face of the Complaint, however, that Plaintiff has not alleged negligence as the underlying unlawful act. Rather, Plaintiff has alleged that Defendants conspired to commit the unlawful acts of fraud, deception, and misrepresentation. Specifically, Plaintiff states in paragraph 23:

> [Defendants] have engaged in a conspiracy to mislead, deceive, and confuse the public, including plaintiff, regarding the overwhelming evidence that cigarette smoking causes fatal disease, that the nicotine in cigarettes is a powerfully addictive substance, and that bystander exposure to cigarette smoke causes disease.... The cigarette manufacturers have taken these actions, even though they have known for years, based on their own secret research, that their products eventually injure or kill consumers and bystanders when their products are used exactly as intended.

(Compl. ¶ 23).

 Defendants next argue that if Plaintiff is alleging that the underlying unlawful act is fraud, she has not plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). To support their contention, Defendants cite this Court's decision in *Sonnenreich,* 929 F.Supp. at 420. In *Sonnenreich,* this Court dismissed a civil conspiracy claim based on fraud, without prejudice to amend, because the plaintiff's allegations were "vague and would require speculation on the part of Defendants and the Court." *Id.* Specifically, this Court noted that the plaintiff had failed to allege relevant dates, forms of publication, and impact on her individual injuries. As such, the fraud allegation in *Son-*

*nenreich* did not meet the requirement of particularity under Rule 9(b).

In the instant case, Plaintiff has plead fraud, deception, and misrepresentation with particularity. In conjunction with paragraph 23 of the Complaint, Plaintiff provides one hundred and seventy-seven other paragraphs comprising thirty-five pages detailing dates, names of publications, impact on Plaintiff and the public, names of persons involved, and even direct quotes from documents, meetings, and hearings. Unlike the plaintiff in *Sonnenreich,* who claimed that the alleged conspirators' concealment of their acts precluded her form pleading all the relevant acts, *Id.,* Plaintiff in the instant case has presented sufficient information to plead fraud, deception, and misrepresentation with particularity. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997) (A claim of fraud meets the requirements of Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents, who made the statements, the time and place of the statements, the content of the statements or manner in which they misled the plaintiff, and what the defendants gained as a consequence).

**C. Failure to Test**

 Defendants seek to strike paragraphs 14e, 15d, and 16d of the Complaint, which allege that Defendants had a duty to test, on the ground that there is no independent duty to test products under Florida Law. Defendant cites the Florida case, *Adams v. G.D. Searle & Co., Inc.,* 576 So.2d 728, 731 (Fla. Dist.Ct.App.1991), in which the court held that the "duty to test is a subpart of a manufacturer's duty to design a product with reasonable care." *Id.* at 731. In the instant case, Plaintiff does not list failure to test as a separate ground for liability. Rather, Plaintiff's allegations of Defendants' duty to test in paragraphs 14e, 15d, and 16d are part of Count I of the Complaint: "Negligence of Tobacco Manufacturer Defendants." (Compl. pp. 4–5). Thus paragraphs 14e, 15d, and 16d, alleging duty to test, are properly included as a subpart of Plaintiff's larger negligence claim.

### IV. Conclusion

Accordingly, after careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss and Motion to Strike Complaint be, and the same is hereby, DENIED.