Robert T. SHAW and Beatrice Shaw,

v.

**BROWN & WILLIAMSON TOBACCO CORP.**

Civil No. B–95–3280.

United States District Court,
D. Maryland.

Aug. 15, 1997.

Ronald J. Levasseur and Linda W. Buckel, Cumberland, MD, for Plaintiffs.

Francis J. Burch, Raymond G. Mullady, and Robert G. Blue, Baltimore, MD, for Defendant.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court are a Motion to Dismiss (Paper 4) and a Motion to Dismiss Counts IX and X of Amended Complaint (Paper 12), both filed on behalf of defendant Brown & Williamson Tobacco Corporation ("Brown & Williamson"). On Octo-

ber 31, 1995, plaintiffs Robert T. Shaw ("Shaw") and Beatrice Shaw, who are husband and wife, filed a products liability lawsuit against Brown & Williamson. Their eight-count complaint alleges battery (Count I); products liability/defective design (Count II); products liability/defective design inherently unreasonable risk (Count III); products liability/manufacturing defect (Count IV); strict liability/abnormally dangerous activity (Count V); negligent misrepresentation (Count VI); breach of warranty (Count VII); and loss of consortium (Count VIII). Plaintiffs had filed an identical action in the Circuit Court for Allegany County, Maryland on October 30, 1995, the day before filing the instant action. On February 20, 1996, plaintiffs filed an amended complaint, alleging the additional counts of negligence (Count IX) and intentional misrepresentation (Count X).

In these motions, defendant contends that dismissal is appropriate as to plaintiffs' claims for battery, manufacturing misrepresentation, breach of warranty, negligent failure to warn, negligent manufacture, and intentional misrepresentation. Defendant asserts that the battery claim is time barred, and further maintains that plaintiffs cannot establish that defendant had the requisite intent to commit a battery. Defendant submits that plaintiffs' manufacturing defect fails to state a claim upon which relief can be granted in strict liability or negligence, because it contains no more than a "bald statement" of a manufacturing defect. As to plaintiffs' abnormally dangerous activity claim, defendant asserts that the design, manufacture, marketing, and distribution of cigarettes is not an abnormally dangerous activity under Maryland law. Alternatively, defendant contends that this claim is defective because plaintiffs have failed to allege that the manufacture or marketing of cigarettes is abnormally dangerous in relation to where it occurs and because defendant did not own or control the land where Shaw was injured. Defendant maintains that plaintiffs' breach of implied warranty claim is statutorily time-barred.

Defendant submits that plaintiffs' claims for negligent misrepresentation, negligent failure to warn, and intentional misrepresentation are preempted by the *Public Health Cigarette Smoking Act of 1969*, Pub.L. 91–222 (1970), as amended, 15 U.S.C. §§ 1331–1340 (hereinafter the "1969 Act"). Further, defendant asserts that the negligent misrepresentation claim must fail because plaintiffs have not alleged that defendant made an affirmative misrepresentation as required under Maryland law, and that the intentional misrepresentation claim both fails to state the circumstances of the alleged fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure, and fails to state a claim for intentional misrepresentation either by affirmative statement or by concealment.

Opposing the motions, plaintiffs maintain that they have stated claims upon which relief can be granted as to each count in their complaint. The Court will address plaintiffs' specific contentions below.[1]

### I.

Plaintiffs allege the following facts. Robert T. Shaw was employed as a long distance truck driver with the Kelly–Springfield Tire Company from 1968 to 1991. From May 1, 1973 to November 14, 1984, Shaw routinely traveled in an enclosed truck with a co-worker who smoked Raleigh cigarettes, which are manufactured, produced, and distributed by Brown & Williamson. Shaw did not smoke cigarettes at any time during his employment with Kelly–Springfield. Nevertheless, Shaw was diagnosed with lung cancer in 1992. Shaw and his wife allege that he developed lung cancer as a result of his exposure to second-hand or environmental tobacco smoke (hereinafter "ETS") emitted from the Raleigh cigarettes.

### II.

Since the Court has not considered any materials outside of the pleadings, this motion will be addressed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The rule provides for dismissal of a complaint for

---

1. The parties agree that Maryland substantive law governs the disposition of this case.

failure to state a claim upon which relief can be granted.

Due to the severe impact of dismissals, the Court will grant Rule 12(b)(6) motions "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989); *De Sole v. United States,* 947 F.2d 1169, 1171 (4th Cir.1991). The Fourth Circuit has long held "that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would he entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir.1969) (citation omitted); *Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 n. 4 (4th Cir.1993), *cert. denied sub nom., American Home Products Corp. v. Mylan Lab., Inc.,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994); *Brooks v. City of Winston–Salem, North Carolina,* 85 F.3d 178, 182 (4th Cir.1996). In reviewing the pleadings, the Court must accept all of the plaintiff's well-pleaded allegations as true, and must construe them in the light most favorable to the plaintiff. *Custer v. Sweeney,* 89 F.3d 1156, 1163 (4th Cir.1996) (citing *Mylan Lab., Inc.,* 7 F.3d at 1134).

## III.

### *Preemption*

The Court will first consider defendant's contention that plaintiffs' claims for negligent misrepresentation, negligent failure to warn, and intentional misrepresentation are preempted by the 1969 Act.

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Thus, state law that conflicts with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981) (citing *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)). A preemption analysis "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that

[is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Accordingly, " 'the purpose of Congress is the ultimate touchstone' " of a preemption analysis. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 222–23, 11 L.Ed.2d 179 (1963)).

The Supreme Court has explained that congressional intent "may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)). "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617 (internal quotations and citations omitted).

On the other hand, when Congress enacts a provision defining the preemptive reach of a statute, " 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation," *id.* at 517, 112 S.Ct. at 2618 (quoting *California Federal Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987)), so long as the "provision provides a 'reliable indicium of congressional intent with respect to state authority.' " *Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2618 (quoting *Malone,* 435 U.S. at 505, 98 S.Ct. at 1190). Matters beyond the preemptive reach of such a provision are not preempted. *Cipollone,* 505 U.S. at 517, 112 S.Ct. at 2617–18. Thus, when an act contains a section that explicitly addresses preemption, the Court's task is to "identify the domain expressly preempted by" the section. *Id.*

In 1964, an advisory committee convened by the Surgeon General issued a report stating that "[c]igarette smoking is a health hazard of sufficient importance in the United

States to warrant appropriate remedial action." H.R.Rep. 98–805, 98th Cong., 2d. Sess. 7 (May 23, 1984), 1984 U.S.C.C.A.N. 3718, 3720. In response to this report and to an effort by the Federal Trade Commission (FTC) to regulate the advertising and labeling of cigarettes, Congress enacted the *Federal Cigarette Labeling and Advertising Act* in July 1965. Pub.L. 89–92 (1965), as amended, 15 U.S.C. §§ 1331–1340 (hereinafter the "1965 Act"). Section 2 of the 1965 Act established the policy of Congress and the purpose of the Act "with respect to any relationship between smoking and health" and declared the competing dual purposes that have, in some form, remained a part of the labeling act for the past thirty-two years: (1) adequately informing the public that cigarette smoking may be hazardous to your health; and (2) protecting the national economy from the burden imposed by diverse, nonuniform and confusing cigarette labeling and advertising regulations. Pub.L. 89–92, § 2 (1965). In accordance with its first purpose, the 1965 Act required that each cigarette package be labeled with the warning statement "Caution: Cigarette Smoking May Be Hazardous to Your Health." *Id.* at § 4. The 1965 Act recognized its second purpose by including a preemption clause: "No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package." *Id.* at § 5.

The 1969 Act strengthened the warning by changing the required label to "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health." In addition, Congress changed the statute's preemption clause to its present form: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 15 U.S.C. § 1334(b). The 1969 Act also prohibited cigarette advertising on television and radio.

The labeling act was again amended in 1984 with the enactment of the *Comprehensive Smoking Education Act*, Pub.L. 98–474 (1984), codified at 15 U.S.C. §§ 1331–1341 (hereinafter the "1984 Act"). The 1984 Act extended the warning requirement to cigarette advertisements, and required a rotation of the following four warning messages:

*Surgeon General's Warning:* Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.

*Surgeon General's Warning:* Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.

*Surgeon General's Warning:* Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.

*Surgeon General's Warning:* Cigarette Smoke Contains Carbon Monoxide.

15 U.S.C. § 1333.

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court considered the preemptive scope of the 1965 and 1969 Acts. There, the son of a woman who died of lung cancer after smoking for 42 years maintained an action on his mother's behalf against several cigarette manufacturers, alleging breach of express warranty, failure to warn, fraudulent misrepresentation, and conspiracy. A plurality of the Court found that the labeling acts preempted the claims based on a failure to warn.

Writing for the plurality, Justice Stevens began his analysis by noting that the preemptive reach of the 1965 and 1969 Acts "is governed entirely by the express language in § 5 of each Act." *Cipollone*, 505 U.S. at 517, 112 S.Ct. at 2618. He thus set out to "identify the domain expressly preempted by . . . those sections." *Id.* Justice Stevens explained that the Court "must fairly but—in light of the strong presumption against pre-emption—narrowly construe the precise language of § 5(b) and . . . must look to each of petitioner's common law claims to determine whether it is in fact pre-empted." *Id.* at 523, 112 S.Ct. at 2621. Thus, in considering whether a common law claim is preempted, courts must determine

whether the legal duty that is the predicate of the common law damage action constitutes a "requirement or prohibition based on smoking and health . . . imposed

under State law with respect to .... advertising or promotion," giving that clause a fair but narrow reading.... [E]ach phrase within that clause limits the universe of common law claims pre-empted by the statute.

*Id.* at 524, 112 S.Ct. at 2621–22.

■ In applying these principles to the case at bar, the central inquiry is whether the failure to warn claims of a non-smoker constitute claims "based on smoking and health," giving that provision a fair but narrow reading. If the Court finds that such claims are "based on smoking and health," then they are preempted. If, on the other hand, the Court determines that such claims are not "based on smoking and health," then they are impliedly not preempted.

Plaintiffs argue that § 5 is addressed only to consumers of cigarettes, and that it therefore does not preempt the claims of persons affected by second-hand smoke. In other words, plaintiffs read the phrase "based on smoking and health" to mean "based on *one's own* smoking and *one's own* health," rather than to mean "based on *one's own or another's* smoking and *one's own or another's* health." The Court finds that either of these meanings can reasonably and plausibly attach to the language of the provision. Thus, the Court concludes that the statutory language of this provision is ambiguous on the point at issue and does not provide a "reliable indicium of congressional intent." *Cipollone*, 505 U.S. at 517, 112 S.Ct. at 2618. In an effort to ascertain congressional intent as to the meaning of this provision, the Court will now turn to other sources, such as additional language from the Labeling Acts and the legislative history of the Acts.

The language of the 1984 Act lends support to plaintiffs' position, stating that the purpose of the Act is "to provide a new strategy for making Americans more aware of any adverse health effects of smoking, to assure the timely and widespread dissemination of research findings and to enable individuals to make informed decisions about smoking." Pub.L. 98–474, 98th Cong. § 2 (1984). In addition, the House Report that accompanied the 1984 Act lists seven findings

by the Surgeon General regarding the adverse health effects of cigarette smoking:

1. Cigarette smoking is the largest preventable cause of illness and premature death in the United States and is associated with the unnecessary deaths of over three hundred thousand Americans annually.

2. Cigarette smoking in the United States is a major cause of cancer of the lung, larynx, oral cavity, and esophagus and is a contributory factor in cancer of the urinary bladder, kidney and pancreas.

3. Cigarette smoking is a major cause of chronic bronchitis and emphysema in the United States.

4. Cardiovascular disease accounts for nearly one-half of the deaths in the United States and it is estimated that one-third of the deaths of the deaths attributed to cardiovascular disease are associated with smoking.

5. Pregnant women who smoke have an elevated risk of miscarriages, stillbirths, and premature births, and giving birth to infants with low birth weight.

6. Quitting or never starting cigarette smoking will reduce an individual's risk of illness or premature death.

7. Federal, State and private initiatives should be encouraged to convey to the American people information on any adverse health effects of smoking.

H.R.Rep. No. 98–805, at 13–14 (1984), 1984 U.S.C.C.A.N. at 3726, 3727. While this list is replete with references to "smoking" and to "cigarette smoking," and also includes a reference to "women who smoke," it does not include any language broad enough to warn of the dangers associated with the inhalation of ETS. Moreover, the sixth finding encompasses no more than that individuals quit or never start smoking. Thus, this list of risks clearly does not indicate an intent to dissuade the public from breathing second-hand smoke. Indeed, it becomes apparent upon reading the list that the references to "smoking" allude only to one's own smoking, not to the smoking of others.

Plaintiffs' position also finds support in the language of the required warnings. The

1969 Act referred specifically to the Surgeon General's determination that "cigarette *smoking* is dangerous to *your* health" (emphasis added). Similarly, the four rotating messages required by the 1984 Act include warnings about the specific dangers of "Smoking" and of "Smoking By Pregnant Women," and a notice about the benefits of "Quitting Smoking." None of these warnings refer in any way to the risks associated with ETS. Further, the legislative histories of the Acts support plaintiffs' position that a nonsmoker's failure to warn claims are not preempted by § 5. The House Report for the 1965 Act states that "[t]he principal purpose of the bill is to provide adequate warning to the public of the potential hazards of *cigarette smoking*." H.R.Rep. No. 89–449 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2350, 2350 (emphasis added). The Senate Report for the 1969 Act compares the life expectancies of smokers and nonsmokers:

> The danger of normal smoking is revealed quite clearly in the 1968 report of the Secretary of Health, Education, and Welfare. That report states, "That life expectancy for a two-pack-a-day, or more, smoker at age 25 is 8.3 years less than that for the corresponding nonsmoker. Even 'light' smokers, those who smoke less than 10 cigarettes per day, have from 2.8 to 4.6 fewer years of life expectancy than corresponding nonsmokers."

S.Rep. No. 91–566 (1970), *reprinted in* 1970 U.S.C.C.A.N. 2652, 2668. A senator noted at the time that "all of these risks literally can be wiped out by the simple expedient of giving up smoking." Statement of Senator Moss, *printed in* 1970 U.S.C.C.A.N. 2668, 2670. In these references to the legislative history of the Labeling Acts, it is again plain that the word "smoking" is intended to refer only to one's own smoking.

The Court should not affix to the term "smoking" a broader meaning in the preemption provision of § 5 than it has in the remaining provisions of the labeling Acts or in the legislative history of the Acts. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) ("A provision that may seem ambiguous in iso-lation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law....."). Restraint in this regard is particularly important where, as here, the Court is obligated to give the term a fair but narrow interpretation. The Court is persuaded, therefore, that the "based on smoking and health" language in § 5 encompasses only claims that concern one's own smoking. Accordingly, the claims of a non-smoker such as Shaw do not constitute claims "based on smoking and health" under § 5(b), and are impliedly not preempted.

Despite the extensive evidence that Congress had no intention of warning the public about the dangers of second-hand smoke, defendant nevertheless contends that the language of § 5 preempts challenges brought by non-smokers regarding the sufficiency of the warning label. Relying on the provision in § 2 concerning protection of the national economy from diverse, nonuniform, and confusing cigarette labeling regulations, defendant asserts that any claim requiring cigarette manufacturers to state warnings in addition to those dictated by the Labeling Acts is preempted. This argument clearly lacks merit, however, as it ignores the explicit restriction on the preemption provision, set forth in § 5 and echoed by the *Cipollone* court, that a claim is preempted only if it is "based on smoking and health."

Defendant also cites a multitude of cases following *Cipollone* that have interpreted § 5 broadly. This reliance is misplaced. Only one of the cases cited by defendant—*Griesenbeck v. American Tobacco Co.*, 897 F.Supp. 815, 823 (D.N.J.1995)—addresses the meaning of the "based on smoking and health" language in a case involving a plaintiff who was not a smoker, and that case is distinguishable from the case at bar. This case involved a five year old child who was severely injured and disfigured as a result of her mother, a smoker, setting fire to the family residence when she accidentally left a burning cigarette on a piece of furniture. The *Griesenbeck* court held that under New Jersey law, a cigarette manufacturer had no legal duty to warn a smoker of the dangers

associated with burning cigarettes, the risk being inherently obvious. *Id.* at 821. On this ground alone, the defendants' Rule 12(b)(6) Motion to Dismiss was granted. Thereafter, *in dicta,* the *Griesenbeck* court held that § 5(b) of the 1969 Act preempts a claim that a cigarette manufacturer failed to warn of the risk of self-immolation arising from a cigarette user's negligent care of her own cigarette. In so finding, the court determined that the mass notification sought by plaintiff related to smoking and health: "The threat of self-immolation arising from the negligent care of one's cigarette is a 'health risk' under any common sense construction of the phrase." *Id.* at 823. However, *Griesenbeck* concerned whether the mandatory warning adequately informed a *smoker* of the risks associated with cigarettes. While the smoker had not been warned of the particular risk at issue—the risk of self-immolation—she had, as a smoker, been privy to a warning pursuant to the 1965 and 1969 Acts. Such is not the case here. The Court further notes that the dicta in *Griesenbeck* is not, in any event, binding on this Court.

In the remaining cases cited by defendant, the relationship between smoking and health was not in dispute, as the plaintiffs were current or former smokers and their injuries were traditional, smoking-related illnesses. *See, e.g., Cantley v. Lorillard Tobacco Co., Inc.,* 681 So.2d 1057 (Ala.1996) (smoker who died from cancer of the hypopharynx and larynx); *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168 (5th Cir.1996) (lifetime smoker who died from complications relating to throat cancer), *cert. denied,* —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996); *Sonnenreich v. Philip Morris Inc.,* 929 F.Supp. 416 (S.D.Fla.1996) (injuries suffered as a result of smoking cigarettes).

For all of the aforementioned reasons, the Court holds that plaintiffs' negligent misrepresentation, negligent failure to warn, and intentional misrepresentation claims are not preempted by § 5. The Court will now consider defendant's remaining grounds for dismissal.

### *Battery (Count I)*

■■ Defendant challenges plaintiffs' ability to establish that Brown & Williamson had the intent necessary to commit a battery. Under Maryland law, "[a] battery is the 'unpermitted application of trauma by one person upon the body of another person.'" *Janelsins v. Button,* 102 Md.App. 30, 35, 648 A.2d 1039 (1994) (quoting *McQuiggan v. Boy Scouts of America,* 73 Md.App. 705, 714, 536 A.2d 137 (1988)); *accord Watson v. Peoples Sec. Life Ins. Co.,* 322 Md. 467, 481, 588 A.2d 760 (1991) ("An assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact. A battery is its consummation.") (quoting *Continental Cas. Co. v. Mirabile,* 52 Md.App. 387, 398, 449 A.2d 1176 (1982)).

■■ "[T]he tort of battery requires intent by the actor 'to bring about a harmful or offensive contact.... [It is] confined to intentional invasions of the interests in freedom from harmful or offensive contact.'" *Janelsins,* 102 Md.App. at 35, 648 A.2d 1039 (quoting Fowler V. Harper, 1 *The Law of Torts* § 3.3, at 272–73, 276 (2d ed.1986)) (emphasis in original). Accidental contact does not constitute a battery because "[w]here an accident occurs, ... the actor would not have *intended* to invade the other's interest." *Janelsins,* 102 Md.App. at 35 n. 5, 648 A.2d 1039 (emphasis in original) (citation omitted). A defendant in a battery action need not have intended to do harm, however, as the crux of a battery claim is an absence of consent on the part of the plaintiff. *Ghassemieh v. Schafer,* 52 Md.App. 31, 38, 447 A.2d 84 (1982). Nevertheless, he must have done some affirmative act and must have known that an unpermitted contact was substantially certain to follow from that act. Indeed, it is this intent that separates battery from mere negligence:

"In negligence, the actor does not desire to bring about the consequences that follow, nor does he know that they are substantially certain to occur, or believe that they will. There is merely a risk of such consequences, sufficiently great to lead a reasonable man in his position to anticipate them, and to guard against them. If an automobile driver runs down a man in the street before him, with the desire to hit

him, or with the belief that he is certain to do so, it is an intentional battery; but if he has no such desire or belief, but merely acts unreasonably in failing to guard against a risk which he should appreciate, it is negligence."

*Id.* at 41, 447 A.2d 84 (quoting Prosser, *Law of Torts* § 31, at 145 (4th ed.1971)).

Plaintiffs argue that the intent requirement is satisfied by Brown & Williamson's intentional manufacture, marketing, and distribution of Raleigh cigarettes, on the basis that such acts "set[ ] in motion the inevitable series of events leading to plaintiff Robert Shaw's injuries." The Court disagrees.

In *Pechan v. DynaPro, Inc.*, 251 Ill.App.3d 1072, 190 Ill.Dec. 698, 622 N.E.2d 108 (1993), a plaintiff alleged that her former employer was liable for her exposure to second-hand cigarette smoke in the workplace. *Id.* 190 Ill.Dec. at 701, 622 N.E.2d at 111. The appellate court affirmed the dismissal of plaintiff's battery count, finding that the employer could not, as a matter of law, have had the intent necessary to commit a battery. *Id.* at 708, 622 N.E.2d at 118. The *Pechan* court reasoned that "[s]moking is a legal activity and not an act of battery because, generally, smokers do not smoke cigarettes with the intent to touch nonsmokers with secondhand smoke." *Id.* at 708, 622 N.E.2d at 118. Similarly, Brown & Williamson does not manufacture, market, or distribute cigarettes for the purpose of touching nonsmokers with second-hand smoke. Furthermore, Brown & Williamson did not know with a substantial degree of certainty that second-hand smoke would touch any particular non-smoker. While it may have had knowledge that second-hand smoke would reach some non-smokers, the Court finds that such generalized knowledge is insufficient to satisfy the intent requirement for battery. Indeed, as defendant points out, a finding that Brown & Williamson has committed a battery by manufacturing cigarettes would be tantamount to holding manufacturers of handguns liable in battery for exposing third parties to gunfire. Such a finding would expose the courts to a flood of far-fetched and nebulous litigation concerning the tort of battery. It is unsurprising that

neither plaintiffs nor the Court have been able to unearth any case where a manufacturer of cigarettes or handguns was found to have committed a battery against those allegedly injured by its products.

Accordingly, dismissal is appropriate with respect to Count I. Because the Court dismisses Count I based on defendant's lack of intent, it need not consider whether this count is also time barred.

### Manufacturing Defect (Count IV)

■ Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the requirements for pleading a claim in federal court, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While this is a liberal standard, it often requires "more detail ... than [a] bald statement by plaintiff that he has a valid claim of some type against defendant." 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 318 (2d ed.1990).

In Count IV, plaintiffs allege only that defendant is liable for placing into the stream of commerce cigarettes that contain a "manufacturing flaw." This allegation amounts to no more than just such a bald statement. Plaintiffs acknowledge that they are aware of no specific facts to support this claim at this time, but nevertheless request that the count not be dismissed because "the exact nature of Defendant's manufacturing defect is an issue to be resolved through the processes of discovery." The Court finds, however, that this is an unsatisfactory rationale for retaining this count. Accordingly, the Court dismisses Count IV of plaintiffs' complaint without prejudice. This ruling allows plaintiffs the opportunity to apply for leave to amend its complaint if, during the discovery period, they develop evidence of a manufacturing defect.

### Abnormally Dangerous Activity (Count V)

■■ Maryland recognizes the theory of strict liability for abnormally dangerous activities as articulated in sections 519 and 520 of the Restatement (Second) of Torts. *Kelley v. R.G. Indus., Inc.*, 304 Md. 124, 132, 497 A.2d 1143 (1985); *Yommer v. McKenzie*, 255

Md. 220, 224, 257 A.2d 138 (1969). Under these sections, an activity is abnormally dangerous if it meets the following six factors:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*Kelley,* 304 Md. at 132–33, 497 A.2d 1143; *Yommer,* 255 Md. at 224, 257 A.2d 138.

The Maryland courts have "refused to extend the abnormally dangerous activities doctrine to instances in which the alleged tortfeasor is not an owner or occupier of land," *Kelley,* 304 Md. at 133, 497 A.2d 1143 (citing *Toy v. Atlantic Gulf & Pacific Co.,* 176 Md. 197, 4 A.2d 757 (1939)) and have further found the doctrine to require "that the activity be abnormally dangerous in relation to the area where it occurs." *Kelley,* 304 Md. at 133, 497 A.2d 1143. Thus, in *Kelley v. R.G. Industries, Inc.,* the Court of Appeals determined that the manufacture or marketing of handguns does not constitute an abnormally dangerous activity under Maryland law, regardless of whether a handgun satisfies the six factors from the Restatement. *Id.* at 133, 497 A.2d 1143. The court reasoned that "[t]he dangers inherent in the use of a handgun in the commission of a crime ... bear no relation to any occupation or ownership of land." *Id.*

The holding in *Kelley* is dispositive of Count V of the case at bar. The manufacture or marketing of cigarettes is not abnormally dangerous in relation to the area where it occurs. Indeed, the risk of harm created by Raleigh cigarettes is entirely unrelated to the ownership of land by Brown & Williamson.

Plaintiffs argue that this "ownership" requirement is satisfied by the fact that Brown & Williamson owns and occupies the land on which it manufactures its cigarettes. However, such a finding would clearly be inconsistent with *Kelley,* as the court there did not consider it important that the handgun manufacturer occupied the land on which the manufacturing took place. Because plaintiffs do not allege that Shaw's injuries were caused by his proximity to the allegedly abnormally dangerous activities, they cannot state a cause of action for abnormally dangerous activity under Maryland law, and Count V must be dismissed. Accordingly, the Court need not consider defendant's additional grounds for dismissal of this count.

*Negligent Misrepresentation (Count VI)*

In addition to arguing that Count VI is preempted, defendant contends that this count must be dismissed as insufficiently pled. In order to succeed on a cause of action for negligent misrepresentation in Maryland, a plaintiff must demonstrate that

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffered damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 337, 439 A.2d 534 (1982). The first element of this tort appears to require an affirmative representation on the part of defendant. *See, e.g., Virginia Dare Stores v. Schuman,* 175 Md. 287, 291–92, 1 A.2d 897 (1938) (finding that recovery is permitted for negligent misrepresentation "where one relies on statements of another, negligently volunteering an erroneous opinion"). Indeed, the Court is aware of no case in Mary-

land where a judgment for negligent misrepresentation was upheld in the absence of such an affirmative representation.[2] An affirmative representation may, however, consist of non-verbal conduct under certain circumstances. *Council of Co–Owners Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 41–42, 517 A.2d 336 (1986).

 Count VI of the complaint does not allege that Brown & Williamson made an affirmative misrepresentation. The count merely states that Brown & Williamson "negligently misrepresented material facts ... in that it failed to disclose information ... it possessed regarding the harmful consequences of ... second-hand or environmental tobacco smoke." Plaintiff suggests that Brown & Williamson's alleged failure to disclose information may constitute a nonverbal representation. The Court disagrees. At bottom, this allegation amounts to a charge that defendant did nothing, thereby breaching a duty to disclose information. Such inaction does not constitute non-verbal conduct. Accordingly, the Court dismisses Count VI without prejudice. This ruling allows plaintiffs the opportunity to apply for leave to amend its complaint if, during the discovery period, they acquire evidence that Brown & Williamson made a false affirmative representation.

### Breach of Warranty (Count VII)

 Section 2–725 of the Maryland Commercial Law Code provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Md.Com. Law I Code Ann. § 2–725(1) (1992) (" § 2–725"). The statute further provides as follows:

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such perfor-

mance, the cause of action accrues when the breach is or should have been discovered.

*Id.* at § 2–725(2).

 This four-year statute of limitations applies to actions for breach of warranty brought by third parties. *Frericks v. General Motors Corp.*, 278 Md. 304, 316, 363 A.2d 460 (1976); *Mills v. International Harvester Co.*, 554 F.Supp. 611, 612–13 (D.Md. 1982). Further, actions for breach of an implied warranty cannot extend to future performance since such an extension must be explicit. *Rockstroh v. A.H. Robins Co., Inc.*, 602 F.Supp. 1259, 1268–69 (D.Md.1985) (citing *Mawdsley v. A.H. Robins Co., Inc.*, No. B–82–106 (D.Md. October 19, 1984)).

Plaintiffs in the present case concede that Shaw's co-worker did not purchase Raleigh cigarettes within the four-year period before the commencement of this action. Indeed, the complaint states that Shaw's last exposure to Raleigh cigarettes came on November 14, 1984, nearly eleven years before plaintiffs filed the complaint.

Plaintiffs nevertheless contend that tolling the limitations period would be equitable under the circumstances of this case. However, this Court has rejected application of tolling principles to claims for breach of implied warranty. In *Mills v. Int'l Harvester Co.*, 554 F.Supp. 611 (D.Md.1982), this court held that the "discovery rule" set forth in *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), which establishes that a cause of action under the general Maryland statute of limitations accrues when the plaintiff knew or reasonably should have known of the wrong, does not apply to warranty actions for which another provision of the Code, namely § 2–725, " 'provides a different period of time within which an action shall be commenced.' " *Mills*, 554 F.Supp. at 613 (quoting Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1980 Repl. Vol.)). The court noted that "§ 2–725 means just what it says: a warranty action must be brought within four years of the tender of

---

**2.** Plaintiff suggested at oral argument that this claim was one for negligent concealment. The Court has found no case where negligent concealment has been recognized as a tort in Maryland.

the goods forming the basis of the warranty." *Mills,* 554 F.Supp. at 612.

In light of the holding in *Mills,* the Court is unpersuaded by plaintiffs' plea for a liberal construction of the limitations period in § 2–725. Accordingly, the Court finds that Count VII is time barred.

### *Negligence (Count IX)*

In Count IX, plaintiffs allege negligent failure to warn, negligent manufacture, and negligent design. Defendant does not seek dismissal of the negligent design claim, but contends that plaintiffs have failed to state a claim with respect to both the negligent failure to warn and the negligent manufacture claims. Specifically, defendant contends that plaintiffs' negligent failure to warn claim is preempted by the 1969 Act, and that plaintiffs' negligent manufacture claim is defective because plaintiffs "fail to enumerate what manufacturing flaw resulted from Brown & Williamson's alleged negligence."

■ As set forth above, the Court rejects defendant's assertion that plaintiffs' negligent failure to warn claim is preempted. Accordingly, the Court denies defendant's motion insofar as it pertains to Count IX's negligent failure to warn claim. The Court reaches a different result, however, with respect to defendant's claim for negligent manufacture. The only reference to a manufacturing defect in Count IX is the allegation that Brown & Williamson "had a duty of care to produce their cigarettes in a proper fashion so as not to endanger" Shaw. This allegation is no more specific than the assertion of a "manufacturing flaw" in Count IV. Thus, dismissal is appropriate here for the reasons set forth in the sub-section of this Opinion addressing Count IV. This dismissal again is without prejudice, thereby allowing plaintiffs an opportunity to apply for leave to amend their amended complaint if they develop evidence of a manufacturing defect during discovery.

### *Intentional Misrepresentation (Count X)*

■ In addition to arguing that Count X is preempted, defendant contends that plaintiffs' intentional misrepresentation claim fails to state a claim for intentional misrepresentation either by affirmative statement or by concealment. Plaintiffs conceded at oral argument that Count X does not, and was not intended to, state a claim for intentional misrepresentation by affirmative statement. Thus, the Court will treat this Count as a claim for intentional misrepresentation by concealment only.

■ In order to state a claim for intentional misrepresentation by concealment, plaintiffs must allege either that defendant had a duty to disclose a material fact to them and failed to disclose the fact, or that defendant concealed a material fact for the purpose of defrauding them. *Finch v. Hughes Aircraft Co.,* 57 Md.App. 190, 232, 469 A.2d 867, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985) (citing *Fegeas v. Sherrill,* 218 Md. 472, 476–77, 147 A.2d 223 (1958)). In addition, plaintiffs must allege that they suffered damage as a result of the concealment. *Finch,* 57 Md.App. at 232, 469 A.2d 867.

The Court finds that plaintiffs have alleged all of these elements. Plaintiffs assert in their amended complaint that defendant was in possession, from 1973 through 1984, of information indicating that ETS was a toxic substance, that defendant had a duty to disclose this information to Shaw, that defendant failed to disclose the information concerning the carcinogenic effects of ETS with the intent to deceive Shaw about the safety of second-hand smoke, and that Shaw suffered serious injury as a result of this concealment.

■ Defendant submits that plaintiffs must further allege that Shaw acted in justifiable reliance on the concealment. While justifiable reliance is certainly an element of a fraud by affirmative statement, it is unclear whether Maryland law requires a showing of justifiable reliance to establish fraud by concealment. *See id.* at 231–34, 469 A.2d 867 (listing justifiable reliance as an element of fraud generally, but failing to mention justifiable reliance as a requirement of fraud by concealment). As a practical matter, it would be extremely difficult for a plaintiff to demonstrate that he or she justifiably relied

**552**

on a defendant's failure to make a statement. This issue need not be resolved here, however, as the Court finds that plaintiffs have, in any event, sufficiently pled justifiable reliance in their amended complaint. Defendant contends that justifiable reliance is insufficiently pled because plaintiffs state only that Shaw justifiably relied on defendant's "assertions," and do not mention that Shaw relied on defendant's "concealment." The presence of the word "assertions" does not, however, prevent defendant from understanding the nature and substance of this cause of action. Thus, while this allegation is certainly not a model of clarity, neither does it provide a basis for dismissing the concealment claim.

Defendant also contends that plaintiffs have failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." With respect to fraud committed by affirmative statements, "[p]articularity of pleading is required with regard to the time, place, speaker and contents of the allegedly false statements, as well as the manner in which statements are supposedly false and the specific facts which raise an inference of fraud." *In re Medimmune, Inc. Securities Litigation,* 873 F.Supp. 953, 960 (D.Md. 1995). Such particularity cannot be met in a concealment case, however, because an omission "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Flynn v. Everything Yogurt,* 1993 WL 454355, at *9 (D.Md. Sept.14, 1993). Thus, this Court has recognized that these particularity requirements are less strictly applied with respect to claims of fraud by concealment. *Id.; see also Bonfield v. AAMCO Transmissions, Inc.,* 708 F.Supp. 867, 875 (N.D.Ill.1989) (stating that allegations of omissions are "really not subject to Rule 9(b) analysis").

Plaintiffs' claims regarding the alleged concealment in the present case are as detailed as the claims of the plaintiff in *Flynn.* The Court finds, therefore, that plaintiffs' assertions with respect to this Count are sufficiently detailed to satisfy a relaxed Rule 9(b) analysis and to withstand this motion to dismiss.

## IV.

For all of the foregoing reasons, the Court grants defendant's Motion to Dismiss, dismissing with prejudice Counts I, V, and VII, and dismissing without prejudice Counts IV and VI. In addition, the Court grants in part and denies in part defendant's Motion to Dismiss Counts IX and X of Amended Complaint. With respect to Count IX, the motion is denied as to plaintiffs' claim for negligent failure to warn, and granted without prejudice as to plaintiffs' claim for negligent manufacture. As to Count X, the motion is denied.